Francis Carling (FC 1016)
Collazo Carling & Mish LLP
747 Third Avenue
New York, NY 10017-2803
(212) 758-7600

*Attorneys for Plaintiff*



RECEIVED
OCT 2 9 2007
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE MARRERO**

------------------------------------x

RAND PUBLISHING COMPANY INC.,

                         Plaintiff,

        -against-

VENTURETEK L.P., RICHARD ELKIN, ANTOINE
BERNHEIM, STACY BERNHEIM and GENSTAR
LTD.,

                     Defendants.

------------------------------------x

**07 CIV 9596**

07 Civ.    ( )

**COMPLAINT**

      Plaintiff Rand Publishing Company Inc., by its attorneys, Collazo Carling & Mish LLP,

for its complaint in this action respectfully alleges:

### Nature of the Action

     1.    This is an action for indemnification under a written agreement between the

parties.

### The Parties

     2.    Plaintiff Rand Publishing Company Inc. ("Rand") is a Delaware corporation.

Although until 1994 it had offices in New York City, at the present time it does not have active

business operations; it has no principal place of business; and its accounting and oversight

functions are conducted in Connecticut.

     3.    Defendant Venturetek L.P. ("Venturetek") is a New York limited partnership. Its

general partner has his business address in New York County.

4.    Defendant Richard Elkin ("Elkin") is a citizen of New Jersey.

5.    Defendant Antoine Bernheim is a citizen of New York State and a resident of New York County.

6.    Defendant Stacy Bernheim is Antoine Bernheim's spouse, and is a citizen of New York State and a resident of New York County.

7.    Defendant Genstar Ltd. ("Genstar") is a Turks and Caicos corporation whose address is c/o Dome Capital Management, 405 Park Avenue, New York, New York.

### Jurisdiction and Venue

8.    There is complete diversity of citizenship between plaintiff and the defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. The Court has jurisdiction of this action under 28 U.S.C. § 1332(a)(1).

9.    All the defendants except Elkin reside, or maintain offices, in the Southern District of New York. The events giving rise to Rand's claims occurred within the Southern District of New York. Venue is proper within this District under 28 U.S.C §§ 1391(a) and (c).

### Factual Allegations

10.    Rand was organized in February 1993 by Mason P. Slaine ("Slaine") and Michael E. Danziger ("Danziger") to publish a magazine on financial technology, and possibly to pursue other publishing or database opportunities. Later in that year, defendants were invited to invest in Rand, and agreed to do so.

11.    The terms and conditions on which defendants agreed to invest in Rand are set forth in an Agreement for Issuance and Sale of Stock (the "Shareholders' Agreement") entered into as of December 30, 1993, to which Rand, the defendants, Slaine and Danziger are parties.

12.    Section 18 of the Shareholders' Agreement provides as follows:

> *Entire Agreement.* This agreement constitutes the entire contract between the parties with respect to the subject matter of the Agreement. Neither party has relied on any representations not explicitly set forth in this Agreement.

13.    Section 20(a)(ii) of the Shareholders' Agreement provides as follows:

> Each Investor [*i.e.*, all of the defendants] shall indemnify, defend
> and hold harmless the Corporation [*i.e.*, Rand] and each Shareholder
> [*i.e.*, Slaine and Danziger] and each of their successors and assigns,
> from and against any and all Indemnifiable Losses relating to, resulting
> from or arising out of any breach of any of the representations, warranties
> and covenants of such Investor contained in this Agreement or any of the
> other agreements contemplated hereby.

14.    The promises of defendants set forth in Section 18 of the Shareholders'
Agreement constitute, at a minimum, representations and covenants within the meaning of
Section 20(a)(ii) of the Shareholders' Agreement.

15.    Rand was operated by Slaine and Danziger, who were its sole officers and two of
the three authorized directors of the corporation. Rand was an investment vehicle for the funds
contributed to it by Slaine and Danziger, and later by defendants. At the time when defendants
invested in Rand, both Slaine and Danziger were employed in full-time executive positions by
The Thomson Corporation ("Thomson"), and defendants understood that Rand was a spare-time
project for Slaine and Danziger.

16.    Rand's business commenced with the founding of a magazine, *Financial
Technology Review*, and continued with the establishment of a database business, Hospitality
Data Services, Inc. Neither business succeeded. The magazine was shut down in 1994, and the
database business was shut down in 1996. Thereafter, Rand sought opportunities to invest its
remaining funds in businesses managed by others.

17.    Slaine's employment agreement with Thomson, under which he served as
President and Chief Executive Officer of a subsidiary known as Thomson Financial, expired by
its terms on December 31, 1996. Slaine decided not to renew his agreement, and instead took
employment as Chief Executive Officer of a new company, Information Ventures LLC, which he

founded in 1997 together with an affiliate of E.M. Warburg, Pincus & Co. ("Warburg"), one of the premier financial institutions in the United States.

18.     In 1997 and 1998, Information Ventures acquired four businesses: two scientific, technical and medical publishers known as CRC Press, Inc. and St. Lucie Press; an information-systems publishing imprint known as Auerbach; and a patent database company called MicroPatent. These businesses were operated successfully by Information Ventures and, in 1998, Slaine and Warburg decided that Information Ventures should go public, under the name Information Holdings Inc. ("IHI").

19.     Slaine's leaving Thomson and forming Information Ventures were publicized in the business press, as were the acquisitions subsequently made by Information Ventures, and defendants were aware of these events. Prior to the announcement of the initial public offering (the "IPO") of IHI shares, defendants never objected to any of these activities or Slaine's role therein.

20.     In connection with the formation of IHI as a public company, Warburg invited Danziger to serve as a director of IHI if the IPO succeeded. Danziger decided to invest some of his own funds in the IPO, and suggested to Slaine that Rand's remaining funds likewise be invested in the IPO. Slaine agreed that this would be a good investment for those funds, but did not wish to make that decision on his own, or jointly with Danziger, because of the possibility that he would be seen as having a conflict of interest between his duties to IHI and Rand. Slaine and Danziger thus delegated to defendants the responsibility of deciding whether Rand should invest in IHI.

21.     Slaine and Danziger agreed that Danziger would approach defendants to request their consent to the investment of Rand's remaining funds in the IPO. In that connection,

Danziger obtained permission, from the investment bank handling the IPO, for Rand to invest on favorable terms.

22.    Early in July 1998, Danziger called the defendants by telephone and solicited their consent for Rand to invest in IHI's IPO.

23.    Although they appreciated that the opportunity presented by Danziger was an excellent investment prospect for Rand, defendants treated it instead as an opportunity for them to exact "greenmail" in connection with the proposed IPO. Defendants thereupon jointly formed a scheme to extract money from Slaine, Information Ventures and/or Warburg by threatening to interfere with the IPO. Their scheme included the following elements:

(a)    defendants would refuse to permit Rand to invest in the IPO;

(b)    defendants would retain a well-known plaintiffs' law firm to assert a false claim that the four acquisitions previously made by Information Ventures were corporate opportunities that belonged to Rand;

(c)    defendants would threaten to "go public" with their false claims, and thus disrupt the IPO, unless their claims were settled;

(d)    if the threat to disrupt the IPO were not successful, defendants would bring their false claims in court, and try to obtain a settlement by protracting the litigation and running up Rand's costs; and

(e)    because, under applicable Delaware law, it was manifest that there was no colorable basis for their claim of usurpation of corporate opportunities, defendants would also contend that Slaine's activities on Information Ventures' behalf violated oral and written representations allegedly made by Slaine prior to defendants' investment in Rand.

24.    Defendants recognized that the proposed investment of Rand's remaining funds in the IHI IPO would be a beneficial investment for Rand, and, indeed, could make the difference between Rand's success or failure. They blocked the investment in bad faith, solely to facilitate their threat of litigation and the scheme described in the preceding paragraph.

25.    On July 14, 1998, and in furtherance of the scheme described in paragraph 23 above, defendants had the firm of Milberg Weiss Bershad Hynes & Lerach LLP send a letter and draft complaint to Warburg on behalf of all the defendants except Genstar, threatening to sue Rand and Slaine on account of Slaine's work for Information Ventures. The letter stated, in part:

> My client [sic] has suggested that I make a copy of the proposed
> complaint available to you in an effort to resolve this matter before
> it becomes necessary to deal with the claims in a public fashion,
> which would include of course the probable necessity of dealing
> with issues in the proposed Information Ventures offering.

26.    Slaine and Warburg decided not to succumb to defendants' attempt at "greenmail." At a meeting with the Milberg Weiss lawyers on August 3, 1998, Slaine explained why his conduct had been proper in all respects. Milberg Weiss thereafter ceased its involvement with the matter. Appropriate disclosures were added to the IHI prospectus, and the IPO was concluded successfully in August 1998.

27.    The four acquisitions made by Information Ventures had involved an aggregate cash purchase price of $31 million, plus the assumption of $18 million in liabilities. At the time, Rand's total assets were $1.2 million in cash and an illiquid investment of $1.25 million in a company called Progressive Grocer. Under a then recent and applicable decision of the Delaware Supreme Court, *Broz v. Cellular Info. Systems*, 673 A.2d 148 (Del. 1996), defendants did not have a claim for usurpation of a corporate opportunity in these circumstances.

28.     Nevertheless, on October 19, 1998, defendants filed an action in New York Supreme Court against Rand, Slaine, Danziger and Warburg (the "State Court Action"), Index No. 605046/98 (New York County).

29.     In order to avoid the legal bar to their claims described in paragraph 27 above, defendants alleged that Slaine had induced them to invest in Rand by making representations that were later violated by his activities on behalf of Information Ventures (the "Representations Claim"). These allegations were made in bad faith, and asserting them violated defendants' representation and covenant in Section 18 of the Shareholders' Agreement that they had not "relied on any representations not explicitly set forth in this Agreement." Additionally, defendants' bringing the State Court Action violated an implied term of Section 18 of the Shareholders' Agreement that no party would sue any other party to that Agreement on the basis of claimed representations not contained in the Agreement.

30.     Defendants' assertion of the Representations Claim raised issues of fact that made it difficult to have the State Court Action dismissed as a matter of law, and required discovery that protracted the case substantially.

31.     Unbeknownst to Rand, Slaine or Danziger, the principal plaintiff in the State Court Action, Venturetek, had written off its entire investment in Rand on its 1996 tax returns. It declared on its federal and state tax returns for that year that its $2.95 million investment in Rand was completely worthless, and it took a deduction in that amount for its "loss." This was a deliberate fraud by Venturetek on the taxing authorities, including the U.S. government: Rand at the end of 1996 had no debt, over $1 million in cash, and another $1.25 million invested in Progressive Grocer (which turned out to be a very successful investment), and there was no good-faith basis for Venturetek's claim that its investment in Rand had resulted in a total loss.

Moreover, this tax fraud demonstrated Venturetek's bad faith in bringing the State Court Action, since its write-off of its investment in Rand as of the end of 1996 belied its claims in the State Court Action that it wished Rand to make acquisitions for its benefit in 1997 and 1998, and that Information Ventures' acquisitions equitably belonged to Rand.

32.    In 2005, after discovery in the State Court Action was finally concluded, all parties sought summary judgment.

33.    By decision and order entered on March 10, 1996, the Supreme Court, New York County (Cahn, J.) granted summary judgment to Slaine and Danziger on all defendants' claims. A copy of the decision is attached as Exhibit A.

34    The decision of Supreme Court in Slaine and Danziger's favor was unanimously affirmed on appeal by the Appellate Division, First Department, on April 12, 2007. A copy of the decision is attached as Exhibit B. Defendants' motion to reargue, or for leave to appeal to the Court of Appeals, was denied by the Appellate Division by order dated September 25, 2007. A copy of the decision is attached as Exhibit C.

35.    Defendants' implementation of their scheme, including the assertion of the Representations Claim, continued at least through September 2007, when the Appellate Division denied their motion for reargument or leave to appeal. Defendants' refusal to consent to investing Rand's funds in IHI continued until November 29, 2004, when IHI was sold and ceased to exist as a public company.

36.    Rand suffered grievous economic injury as a result of defendants' continuing implementation of the scheme described in paragraph 23 above. Its damages fall into three categories:

(a)    Defendants' bad-faith refusal to permit Rand to invest in the IHI IPO cost Rand between $6.5 and $12.5 million in profits it would have earned if it had made the investment.

(b)    Rand incurred counsel fees and expenses of approximately $900,000 in its defense of the State Court Action.

(c)    Under its by-laws and applicable Delaware law, Rand was required to indemnify Slaine and Danziger for their counsel fees and expenses in the State Court Action, which amounted to a further $1.1 million.

37.    By letter dated September 26, 2007, Rand demanded indemnification from the defendants.  Defendants have not responded to this demand.

### CLAIM FOR RELIEF:
### CONTRACTUAL INDEMNIFICATION

38.    Rand repeats the allegations in paragraphs 10-37 above as though fully pleaded herein.

39.    Rand's damages in this case, as described in paragraph 36 above, were proximately caused by defendants' implementation of the scheme described in paragraph 23 above.

40.    Defendants' refusal to permit Rand to invest in the IHI IPO was an integral part of their scheme.

41.    Defendants' assertion of the Representations Claim in breach of Section 18 of the Shareholders' Agreement was also an integral part of their scheme.

42.    Rand's damages constitute "Indemnifiable Losses" within the meaning of Sections 20(a)(i) and 20(a)(ii) of the Shareholders' Agreement.

43.    The Shareholders' Agreement, by its terms, is governed by New York law.

44.    Under New York law, the Shareholders' Agreement contains an implied covenant of good faith and fair dealing.

45.    Defendants' implementation of their scheme, including without limitation their assertion of the Representations Claim and their refusal to invest Rand's funds in IHI, constituted a breach of Section 18 of the Shareholders' Agreement. Defendants' breach of Section 18 of the Shareholders' Agreement was a breach of defendants' representations and covenants within the meaning of Section 20(a)(ii) of the Shareholders' Agreement, including at a minimum (i) the representation and covenant that defendants had not relied on any representations outside the Shareholders' Agreement, and (ii) the covenant of good faith and fair dealing implied by law.

46.    Rand is entitled to full indemnification from the defendants for its indemnifiable losses, including without limitation those incurred as a result of defendants' implementation of the scheme described in paragraph 23 above.

47.    On September 26, 2007, Rand sent the defendants a demand for indemnification (the "Demand Letter") based on the claims set forth herein. A fair and accurate copy of the Demand Letter is annexed hereto as Exhibit D. Defendants have refused to accede to Rand's demand for indemnification, and have failed and refused to perform their obligation to indemnify Rand for the losses described in the Demand Letter and in this complaint.

WHEREFORE, Rand respectfully requests that the Court enter judgment against the defendants, jointly and severally, for damages in the amount found at trial, but at a minimum for those sums set forth in paragraph 36 above, and for such other and further relief as may be just, including the costs of this action.

Dated: New York, New York
       October 29, 2007

COLLAZO CARLING & MISH LLP

By: _____
       Francis Carling (FC 1016)
747 Third Avenue
New York, NY 10017-2803
(212) 758-7600

Of Counsel:

Frederick A. Brodie (FB 6429)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036-4039
(212) 858-1000

Attorneys for Plaintiff

**EXHIBIT A**

SCANNED ON 3/10/2006

## SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _Cahn_____        PART _49m_

                        _Justice_

_Ventoreter, L.P., et al_

                                INDEX NO. _605046/98_

                                MOTION DATE _3/17/05_

        - v -                   MOTION SEQ. NO. _024_

_Rand Publishing Co.,_          MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

|                                                                 | PAPERS NUMBERED |
|-----------------------------------------------------------------|-----------------|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... |                 |
| Answering Affidavits — Exhibits _____ |                 |
| Replying Affidavits _____ |                 |

**Cross-Motion:** ☐ Yes  ☐ No

Upon the foregoing papers, it is ordered that this motion

**FILED**

MAR 10 2006

COUNTY CLERK'S OFFICE
NEW YORK

MOTION IS DECIDED IN ACCORDANCE
WITH ACCOMPANYING MEMORANDUM
DECISION IN MOTION SEQUENCE . . . . . .

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE _____

Dated: _3/8/06_____        _N. Cahn_____

                                            J.S.C.

Check one:  ☐ **FINAL DISPOSITION**    ☑ **NON-FINAL DISPOSITION**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:      IAS PART 49
----------------------------------------------X
VENTURETEK, L.P., RICHARD ELKIN, ANTOINE        :
BERNHEIM, STACY BERNHEIM, and GENSTAR,
LTD., individually and as shareholders          :    Index No.
of Rand Publishing Co., Inc.,                        605046/98

                                                :
                               Plaintiffs,

                                                :
            -against-

                                                :
RAND PUBLISHING CO., INC., MASON P.
SLAINE, MICHAEL E. DANZIGER,                    :
WARBURG PINCUS VENTURES, L.P. and
E.M. WARBURG, PINCUS & CO., L.L.C.,             :

                               Defendants.      :
----------------------------------------------X
**Herman Cahn, J.**

        Motion sequence numbers 21, 23, 24, and 25 are

consolidated for disposition.

        Defendants Mason P. Slaine and Michael E. Danziger

separately move for summary judgment dismissing the claims

asserted against them in the second amended complaint (seq. nos.

25 and 24, respectively).

        Plaintiffs move for partial summary judgment as to

parts of their causes of action, set forth in 25 numbered

statements contained in their notice of motion (seq. No. 23),

CPLR 3212 (e).

        Defendant Slaine additionally moves for an order

excluding any testimony from non-party J. Morton Davis (seq. no.

21).

**BACKGROUND**

The facts of this case have been detailed in several prior decisions and orders of this court, familiarity with which is presumed.

Rand Publishing Co., Inc. is a small Delaware corporation that was formed, and was wholly owned, by defendants Slaine and Danziger, in February, 1993. At the time, Slaine and Danziger each invested $450,000.00 in Rand in order to launch a new start-up magazine, Financial Technology Review ("FTR"), which focused on the uses of computers and information technology in the financial services industry.

Following FTR's launch, Slaine and Danziger sought to raise additional monies for FTR's future capital needs, as well as to enable them to expand Rand's business by developing another start-up company, a database for the hospitality industry. To these ends, in November 1993, Slaine prepared a "Business Summary," which Rand distributed to certain potential investors (Jaroslawicz Affirm. Ex. A). The Business Summary described Rand as:

> a newly organized business engaged in information publishing. It recently launched its first product, *Financial Technology Review* (FTR), a monthly controlled circulation magazine that covers the uses of computers and information technology in the financial services industry. Rand Publishing Company also intends to develop directories, buyers guides, conferences and expositions in the financial technology field. Additionally, the company is pursuing development of a relational database covering the hospitality industry.

2

> To the extent they are available, Rand Publishing
> Company will also pursue niche acquisitions

(Id.)

The Business Summary indicated that Rand was hoping to raise $5,000,000.00 through the sale of 50% of its shares. The Business Summary indicated that Rand had invested $800,000.00 in FTR up to that date; that it expected to invest a total of $1.5-2.0 million in FTR, and expected to invest a total of $2.0-2.5 million in developing the hospitality database.

Plaintiffs are investors in Rand. Pursuant to an Agreement for Issuance and Sale of Stock dated December 30, 1993, plaintiffs, together, invested a total of $3.6 million in Rand, acquiring 50% of the company (Jaroslawicz Affirm. Ex. H).[1] Slaine and Danziger each retained a 25% share of Rand. Although the Agreement identified FTR as the sole "current business" of Rand (id. ¶ 5), plaintiffs allege that the primary purpose of Rand was to invest in or acquire additional niche publications.

The Agreement provided for a three person board (¶ 4 [k]). Slaine and Danziger served as corporate officers and directors, with plaintiff Venturetek, the largest single shareholder, having the right to name the third member. The Agreement additionally provided that, for so long as plaintiffs

---

[1]     Specifically, plaintiff Venturetek, L.P. invested $2,950,000.00, plaintiff Genstar Ltd. invested $500,000.00, plaintiffs Antoine and Stacy Bernheim together invested $100,000.00, and plaintiff Richard Elkin invested $50,000.00.

3

collectively owned 20% or more of Rand, "Danziger and Slaine shall remain actively involved in the affairs of the Corporation, to the extent that they deem appropriate to develop the business" (¶ 4 [j]).

Neither Slaine nor Danziger were to receive any compensation for their efforts on behalf of Rand.  Indeed, when the Agreement was executed, both Slaine and Danziger were employed full time in executive positions at Thomson Financial Services, Inc., a large provider of financial information and software products.  Between 1994 and 1996, Slaine served as President and Chief Executive Officer of Thomson Financial, where he was actively engaged in seeking niche business acquisitions in the information and publishing field, the same business in which Rand allegedly was engaged.  Their employment at Thomson Financial was known to all Rand investors.

In April 1994, after receiving the infusion of new capital, Rand launched Hospitality Data Services, Inc. ("HDS"), a start-up business offering a database for the hospitality industry.  In early 1995, Rand invested $1,250,000.00 of its remaining cash to acquire, along with a group of other investors, Progressive Grocer Associates ("PGA"), the publisher of two magazines focusing on the supermarket industry.

Ultimately, neither FTR nor HDS, Rand's two start-up companies, proved successful.  Rand terminated its investment in

4

FTR in July 1994, and its investment in HDS in April 1996.  By the end of 1996, Rand had only $1.2-1.3 million in cash remaining on hand, plus its investment in PGA, which was illiquid.

          In quarterly letters sent to plaintiff shareholders between July 1996 and the end of 1997, Slaine represented that he and Danziger continued to be actively engaged in seeking out opportunities to invest Rand's remaining funds.  To that end, plaintiffs were informed, at various times, that Slaine and Danziger had looked at a large Florida based publishing company; had reviewed three investments in the newsletter, book, and electronic information areas; had made an offer on an electronic publisher of tax and accounting information on CD Rom; and had pursued an educational publisher called Technology in Higher Education (Jaroslawicz Affirm. Ex. B).  Some of the letters also indicated that it was difficult to find appropriate investments, given Rand's limited cash position and the competition for investments in the information publishing industry.

          Meanwhile, in December 1996, Slaine left his position at Thomson Financial upon the expiration of his employment contract.  That same month, he formed a new information publishing business, Information Ventures, L.L.C., with Warburg Pincus Ventures, L.P. and E.M. Warburg, Pincus & Co. ("Warburg").  During 1997, the same period in which Slaine was writing letters to Rand shareholders about how difficult it was to find

5

investment opportunities for Rand, Slaine acquired four niche
publication businesses for Information Ventures: (1) CRC Press, a
publisher of scientific, technical and medical, and professional
titles, which was acquired for $13 million cash; (2) St. Lucie
Press, a publisher of professional titles, which was acquired for
$2.6 million cash; (3) Auerbach, a provider of technology-
oriented print and electronic subscription based products, which
was acquired for $8 million cash; and (4) MicroPatent, a provider
of intellectual property information products and services, which
was acquired for $7.4 million cash.

On April 17, 1998, Slaine made a final investment on
behalf of Rand, by investing $500,000.00 of Rand's remaining
funds in Fame Information Services, Inc., a Warburg-controlled
company that provided financial software to investment and
banking firms.  At the time, Slaine was serving on Fame's board
of directors, a fact that was disclosed to Rand shareholders
prior to the purchase.

Unlike Rand, Information Ventures proved quite
successful.  It was decided to take it public, in 1998, as
Information Holdings, Inc. ("IHI").  A prospectus and
registration statement were filed with the SEC in June 1998.  In
anticipation of the initial public offering, Danziger was invited
to, and eventually did, join IHI's Board.  At about this time,
Danziger allegedly suggested to Slaine that Rand be offered the

6

opportunity to invest its remaining funds in shares of IHI as part of the IPO.  After Slaine obtained approval from IHI's underwriter, Danziger contacted the Rand investors and offered them the opportunity to invest Rand's available funds in IHI under favorable terms.  Plaintiffs declined the offer and, shortly thereafter, threatened to sue Slaine for breach of fiduciary duty.  Danziger, who was offered the same opportunity and terms as Rand, did purchase shares during the IPO.

The IPO went forward in August 1998, and IHI proved highly successful.

In October 1998, plaintiffs commenced the instant action against defendants Slaine and Danziger, alleging usurpation of corporate opportunities and breach of fiduciary duty.  The complaint also sought the imposition of a constructive trust over any benefits or proceeds obtained by defendants as a result of their alleged wrongdoing.[2]

In their second amended complaint, plaintiffs allege that Slaine breached his fiduciary duty to Rand by forming Information Ventures, a company engaged in acquiring information publishing businesses in niche markets, the same line of business that Slaine and Danziger had been pursuing on behalf of Rand. Plaintiffs contend that Slaine further breached his fiduciary

---

[2]    The complaint also asserted a claim against Warburg for tortious interference with contract.  That claim has since been settled.

7

duty to Rand by secretly acquiring the four niche publication
businesses for Information Ventures, opportunities which, they
allege, should have been offered to Rand.  Although Danziger was
not involved in the formation of Information Ventures, or its
acquisition of the four niche publications, plaintiffs allege
that he breached his fiduciary duty to Rand by failing to
investigate and stop Slaine from breaching his fiduciary duty and
usurping those corporate opportunities rightfully belonging to
Rand.

        Additionally, during discovery, plaintiffs learned
that, in December 1996, Slaine had entered into an employment
agreement with Warburg for his work with Information Ventures.
That agreement contained an exclusivity provision pursuant to
which Slaine had agreed not to "engage in any other business
activity" (Jaroslawicz Affirm. Ex. I § 4).  Plaintiffs argue that
by entering into such an agreement, Slaine further breached his
fiduciary obligation to Rand to "remain actively involved in the
affairs of the Corporation, to the extent that [he] deem[ed]
appropriate to develop the business" (id., Ex. H ¶ 4 [j]).

        Slaine argues that summary judgment dismissing all of
the claims against him is warranted, as the evidence shows that
Rand was never an operating company or Slaine's employer, but was
merely an investment vehicle with limited funds.  He contends
that since Information Ventures was never in competition with

                                8

Rand, there was no conflict of interest in his overlapping
involvement with each.  Slaine further contends that the four
acquisitions at issue were never Rand's corporate opportunities,
because it was in no financial position to exploit them.
Further, it is argued that the opportunities were not in Rand's
line of business, and it had no interest or expectancy in them.

Danziger argues that summary judgment dismissing the
claims against him is warranted, because he was not involved in
the formation of Information Ventures, and did not know about the
four acquisitions until after each had been made.

Plaintiffs argue that summary judgment on those parts
of their causes of action, set forth in 25 numbered statements
containing various statements of fact or law, should be granted,
as doing so would serve to shorten the trial.

Finally, Slaine seeks to exclude testimony that might
be offered by non-party J. Morton Davis, regarding: (a) any
alleged representations made by Slaine to induce Davis to invest
in Rand; and (b) Davis' claim that he would have been willing to
invest more money in Rand for the acquisition of investment
opportunities.  Slaine argues that any testimony as to
representations made to Davis by Slaine would be irrelevant, as
Davis did not invest in, or become a shareholder of, Rand.
Slaine additionally argues that Davis' testimony regarding his
willingness to invest funds in Rand is unverifiable and self-

9

serving, and thus inadmissable.

**DISCUSSION**

A motion for summary judgment will be granted where a movant has made "a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case" (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). Once the movant has made such a showing, the party opposing the motion has the burden of producing evidentiary facts sufficient to raise triable issues of fact (see Zuckerman v City of New York, 49 NY2d 557 [1980]).

As an initial matter, the court notes that Delaware law applies to plaintiffs' usurpation of corporate opportunity and fiduciary duty claims, as issues of corporate governance are determined by the law of the state of incorporation (Kikis v McRoberts Corp., 225 AD2d 455 [1st Dept 1996]; Hart v General Motors Corp., 129 AD2d 179 [1st Dept], lv denied 70 NY2d 608 [1987]). Rand was incorporated in Delaware.

The corporate opportunity doctrine, as delineated in Delaware law, holds that:

> a corporate officer or director may not take a business opportunity for his own if: (1) the corporation is financially able to exploit the opportunity; (2) the opportunity is within the corporation's line of business; (3) the corporation has an interest or expectancy in the opportunity; and (4) by taking the opportunity for his own, the corporate fiduciary will thereby be placed in a position inimicable to his duties to the corporation.

10

(<u>Broz v Cellular Info. Sys., Inc.</u>, 673 A2d 148, 155 [Del 1996].)

A corollary to the doctrine states that:

> a director or officer *may* take a corporate opportunity
> if: (1) the opportunity is presented to the director or
> officer in his individual and not his corporate
> capacity; (2) the opportunity is not essential to the
> corporation; (3) the corporation holds no interest or
> expectancy in the opportunity; and (4) the director or
> officer has not wrongfully employed the resources of
> the corporation in pursuing or exploiting the
> opportunity.

(<u>Id.</u> [emphasis in original], referencing <u>Guth v Loft, Inc.</u>, 5 A2d
503, 509 [Del 1939].)

These tests:

> provide guidelines to be considered by a reviewing
> court in balancing the equities of an individual case.
> No one factor is dispositive and all factors must be
> taken into account insofar as they are applicable

(<u>Broz</u>, <u>supra</u>, 673 A2d at 155.)

Slaine argues that summary judgment in defendants'
favor is warranted, because the evidence establishes that no part
of the four-part test for finding a usurped corporate opportunity
has been met.  Specifically, Slaine argues that Rand, with only
$1.3 million in remaining cash and $1.25 million in an illiquid
investment in PGA, clearly lacked the funds to make any of the
acquisitions at issue.  He further argues that all four of the
acquisitions at issue were in a different line of business from
that of Rand, as they all were focused in the scientific,
technical and medical segments of the publishing market, and that
there is no evidence that Rand had either an interest or

11

expectancy in any of these acquisitions.  Slaine contends that there was no conflict between his duties to Rand and his work at Information Ventures, as Rand had no exclusive right to his services, and Information Ventures was not in competition with Rand.  Slaine additionally argues that his employment agreement with Warburg did not prevent him from fulfilling any of his obligations to Rand, because the exclusivity provision in that agreement explicitly carved out an exception for "personal investing activities" (Jaroslawicz Affirm. Ex. I § 4).

Slaine has produced evidence to show that the four acquisitions entailed financial needs or risks that exceeded Rand's resources and capacity.  Simply comparing the price of each of the four investments with the amount of cash Rand had, shows that they were beyond Rand's ability to purchase.  Further, nothing in the Agreement requires, or even permits, further investment by existing shareholders, or provides a mechanism for the issuance of additional shares of Rand.  Therefore, Slaine would have had no obligation to renegotiate the terms of the Agreement or restructure Rand in order to raise additional capital.

Specifically, the acquisitions of four companies – CRC Press, St. Lucie Press, Auerbach, and MicroPatent – were all equity transactions.  Each required more than the capital

available to Rand at the time the opportunity arose.[3]  As for CRC
Press, the seller additionally required IHI to assume
$18,000,000.00 in liabilities (Slaine Aff. ¶ 83, Ex. 25).

Moreover, the acquisitions were undertaken at a time
when Rand had no offices, employees, or full-time management
staff available to operate the companies (Slaine Aff. [11/25/98]
¶¶ 17, 29, 36).

In response, plaintiffs submit the affidavit of Martin
A. Bell, a director of Rand.  Bell does not deny that Rand did
not have sufficient liquid assets to purchase the companies
outright, at the time the opportunity arose.  Rather, he
speculates that had plaintiffs known of the opportunity,
"Venturetek and some of Rand's other investors" would have "had,
or had access to, millions of dollars of cash to fund these
acquisitions themselves" (Bell Aff. ¶ 10).

The circumstances are not to be judged by possible
future capabilities of Rand investors.  Under Delaware law, the
right to appropriate an opportunity depends "'on the
circumstances existing at the time it presented itself ...
without regard to subsequent events'" (Broz, 673 A2d at 158,
quoting Guth, 5 A2d at 513]).  A corporation, lacking the

---

[3]    Rand had approximately $1,000,000.00 in liquid assets.
The cash purchase requirements for the referenced companies were
$15,400,000.00 for CRC Press; $4,600,000.00 for St. Lucie Press;
$9,500,000.00 for Auerbach; and $8,000,000.00 for MicroPatent
(Slaine Aff. [11/25/98] ¶ 27).

13

wherewithal at the time the opportunity arose, cannot claim

usurpation based on speculation about the possibility of future

investment (Broz, supra, 673 A2d at 158; see also, Fliegler v

Lawrence, 361 A2d 218, 224 [Del 1976] [corporation could not show

that it had "ready sources capital" for the opportunity at the

time it arose]).

Bell's speculative statements about possible future

investment are rendered even more tenuous by the following: (1)

the Rand Stockholders' Agreement makes no provision for

additional investment by stockholders (Bell Depo. at 463;

Wertheim Depo. at 289; Elkin Depo. at 285, 456-57, 461; Selengut

Depo. at 43, 185-86, 202-04); (2) David Selengut, a member of

Venturetek's general partner, never told anyone at Rand that he

would invest additional money in the company (Selengut Depo. At

460-61); (3) plaintiff Richard Elkin, a Rand stockholder,

testified that he never offered to invest additional money in the

company, nor was he prepared to do so (Elkin Depo. at 645); and

(4) plaintiff Antoine Bernheim, a Rand stockholder, testified

that neither he, his wife, co-plaintiff/stockholder Stacy

Bernheim, or his company, plaintiff Genstar Ltd., were prepared

to invest additional money in the company (Antoine Bernheim Depo.

at 448).

Plaintiffs fail to establish the key prerequisite of

having a "reasonable expectancy" in the opportunity (Guth, supra,

14

5 A2d at 511). Paragraph 4 (j) of the Rand Stockholders'
Agreement provided that Danziger and Slaine "shall remain
actively involved in the affairs" of Rand only "to the extent
that they deem appropriate to develop the business" (see, Bell
Depo. at 246). Moreover, each one of the four companies was
directed to Slaine through his involvement with Information
Ventures and Warburg Pincus; they were not directed to him as a
director of Rand (Slaine Aff. ¶¶ 81-93). Thus, Rand cannot make
out a claim against Slaine in these circumstances, because a
director is not liable when he is presented the opportunity in a
capacity other than as a director or officer of the plaintiff
corporation (Broz, supra, 673 A2d at 155; Guth, supra, 5 A2d at
509).[4]

Consequently, plaintiffs cannot show actionable conduct
on defendants' part, in support of their claims of usurpation of
corporate opportunities. Therefore, defendants motions for
summary judgment dismissing the complaint is granted.

In view of the foregoing, plaintiffs' motion for

---

[4]     The analysis concerning Rand's inability to take
advantage of the opportunity altogether, applies equally to the
benefit of all defendants. Additionally, as for defendant
Danziger in particular, there is no evidence that he played any
role in the formation of Information Ventures, or that he
possessed prior knowledge of the four acquisitions.

partial summary judgment is denied.[5]

Defendant Slaine's motion to preclude the trial testimony of J. Morton Davis is denied, as moot.

Accordingly, it is

ORDERED that defendant Mason P. Slaine's motion for summary judgment to dismiss the claims asserted against him in the second amended verified complaint (seq. no. 25) is granted; and it is further

ORDERED that defendant Michael E. Danziger's motion for summary judgment to dismiss the claims asserted against him in the second amended verified complaint (seq. no. 24) is granted; and it is further

ORDERED that the plaintiffs' motion for partial summary judgment (seq. no. 23) is denied; and it is further

ORDERED that defendant Mason P. Slaine's motion for an order to exclude any testimony from non-party J. Morton Davis in this action (seq. no. 21) is denied, as moot; and it is further

---

[5]     Plaintiffs failed to submit a statement "of the material facts as to which the moving party contends there is no genuine issue to be tried," as required by Rule 19-a of the Rules governing the Commercial Division.  Their failure to have submitted such a statement constitutes another ground for denial of this motion, as indicated by the language of that Rule.

16

ORDERED that the clerk shall enter judgment in accordance herewith.

Dated:     March 8, 2006

ENTER:

_____/s/_____
J.S.C.

17

# EXHIBIT B

Saxe, J.P., Sullivan, Nardelli, Gonzalez, Kavanagh, JJ.

Index 605046/98

773         Venturetek, L.P., et al.,
                Plaintiffs-Appellants,

                    -against-

        Rand Publishing Co., Inc., et al.,
            Defendants,

        Mason P. Slaine, et al.,
            Defendants-Respondents.

-----------------------------

Jaroslawicz & Jaros, New York (David Jaroslawicz of counsel), for
appellants.

Collazo Carling & Mish LLP, New York (Francis Carling of
counsel), for Mason P. Slaine, respondent.

Himelman, Wertheim & Geller, LLC, Old Bridge, NJ (Lawrence H.
Wertheim of counsel), for Michael E. Danziger, respondent.

-----------------------------

    Order, Supreme Court, New York County (Herman Cahn, J.),

entered March 10, 2006, which granted the motions by defendants

Slaine and Danziger for summary judgment dismissing the complaint

against them, and denied plaintiffs' motion for partial summary

judgment, unanimously affirmed, with costs.

    Plaintiffs, shareholders of defendant Rand Publishing Co.,

allege, inter alia, breach of fiduciary duty and usurpation of

corporate opportunities by Slaine and Danziger, also Rand

shareholders, in connection with said defendants' acquisition of

four companies on behalf of another entity of which those

defendants were full-time employees.

    It is well settled that the law of the state in which an

entity was incorporated (here, Delaware) is controlling as to

55

matters relating to its internal affairs (*Carroll v Weill*, 2 AD3d 152, 153 [2003], *lv denied* 2 NY3d 704 [2004]). Under Delaware law, a fiduciary may "take a business opportunity for himself once his corporation has properly rejected the opportunity or if it is established that it is not in a position to take it" (*Field v Allyn*, 457 A2d 1089, 1099 [Del Ch 1983], *affd* 467 A2d 1274 [Del 1983]).

Therefore, while "a corporate officer or director may not take a business opportunity for his own if: (1) the corporation is financially able to exploit the opportunity; (2) the opportunity is within the corporation's line of business; (3) the corporation has an interest or expectancy in the opportunity; and (4) by taking the opportunity for his own, the corporate fiduciary will thereby be placed in a position inimicable to his duties to the corporation," the corollary to this rule is that "a director or officer may take a corporate opportunity if: (1) the opportunity is presented to the director or officer in his individual and not his corporate capacity; (2) the opportunity is not essential to the corporation; (3) the corporation holds no interest or expectancy in the opportunity; and (4) the director or officer has not wrongfully employed the resources of the corporation in pursuing or exploiting the opportunity" (*Broz v Cellular Info. Sys.*, 673 A2d 148, 155 [Del 1996]).

Clearly, Rand lacked the funds to make any of the four acquisitions in question, much less all of them (*see id.*; *Wolfensohn v Madison Fund*, 253 A2d 72, 76 [Del 1969]). At the

time the acquisitions were made, Rand's assets consisted of approximately $1.2 million in cash and an illiquid investment of $1.25 million, whereas the cash purchase prices for the four subject entities totaled $31 million, and the buyer of one of the entities was also required to assume $18 million in liabilities. Although plaintiffs speculate that they were not afforded the opportunity to raise the requisite funds or that they might have been able to finance the purchases by some means other than having to put up the necessary cash, the fact remains that the Rand shareholders agreement made no provision for additional capital contributions from any of the stockholders, and none of the plaintiffs ever offered to invest any more money in Rand.

It is thus clear that at the crucial point at which the employer of Slaine and Danziger acquired the properties (see Broz, 673 A2d at 156), Rand did not possess the financial capacity to purchase any of the four properties, and plaintiffs' conjecture to the contrary is insufficient to raise a triable issue of fact in the absence of any concrete evidence that Rand had the requisite financial resources to avail itself of the opportunity to buy those entities. There is, similarly, no evidence that Rand had any interest or expectancy in the subject properties (id.). Indeed, it is undisputed that Rand had no exclusive right to the services of either individual defendant, and "a corporate officer or director is entirely free to engage in an independent, competitive business, so long as he violates no legal or moral duty with respect to the fiduciary relation

57

that exists between the corporation and himself" (*Guth v Loft, Inc.*, 5 A2d 503, 514 (Del 1939).

We have considered plaintiffs' remaining arguments and find them unavailing.

THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED:  APRIL 12, 2007

Catherine O'Hagan Wolfe
CLERK

58

**EXHIBIT C**

At a Term of the Appellate Division of the Supreme
Court held in and for the First Judicial Department in
the County of New York on September 25, 2007.

Present - Hon. David B. Saxe,            Justice Presiding,
             Joseph P. Sullivan
             Eugene Nardelli
             Luis A. Gonzalez
             E. Michael Kavanagh,        Justices.

------------------------------------X
Venturetek, L.P., et al.,
        Plaintiffs-Appellants,
                                              M-2510
        -against-                        Index No. 605046/98

Rand Publishing Co., Inc., et al.,
        Defendants,

Mason P. Slaine, et al.,
        Defendants-Respondents.
------------------------------------X

        Plaintiffs-appellants having moved for reargument of or,
in the alternative, for leave to appeal to the Court of Appeals
from the decision and order of this Court entered on April 12,
2007 (Appeal No. 773),

        Now, upon reading and filing the papers with respect to
the motion, and due deliberation having been had thereon,

        It is ordered that the motion is denied.

                          E N T E R :

                                     _____
                                              Clerk

**EXHIBIT D**

**RAND PUBLISHING COMPANY INC.**
**70 Baldwin Farms South**
**Greenwich, CT 06831**

September 26, 2007

Venturetek L.P.
c/o David Selengut, c/o Marvin Heiman
25th Floor
39 Broadway
New York, NY 10006

Genstar Ltd.
c/o Dome Capital Management Inc.
405 Park Avenue
New York, NY 10022

Richard Elkin
c/o D.H. Blair & Co.
44 Wall Street
New York, NY 10005

Antoine and Stacy Bernheim
50 East 79th Street
New York, NY 10021

　　　　Re:　　Demand for Indemnification

Dear Investors:

I write on behalf of Rand Publishing Company Inc. ("Rand").

This letter shall constitute a demand for indemnification against each of you under section 20(a)(ii) of the Agreement for Issuance and Sale of Stock dated as of December 30, 1993 (the "Shareholders' Agreement"). Rand is entitled to indemnification from each of you for damages, attorneys' fees and expenses incurred in the course of litigating the action captioned *Venturetek L.P. et al. v. Rand Publishing Co., Inc. et al.*, Index No. 605046/98 (Supreme Court, N.Y. County) (the "Litigation").

Section 20(a)(ii) of the Shareholders' Agreement permits Rand to obtain indemnification from you "from and against any and all Indemnifiable Losses relating to, resulting from or arising out of any breach of any of the representations, warranties or covenants of such Investor contained in this Agreement." Section 20(a)(i) defines "Indemnifiable Losses" as "any and all claims, penalties, fines, sanctions, demands, suits, losses, liabilities, damages, obligations, payments, costs and expenses, paid or incurred, whether or not relating to, resulting from or arising out of any Third Party Claim or any Direct Claim . . . including, without limitation, the reasonable costs

and expenses of any and all actions, suits, proceedings, demands, assessments, judgments, settlements and compromises relating thereto and reasonable attorneys' fees in connection therewith." Section 20(b)(iii) of the Shareholders' Agreement defines a "Direct Claim" as "any Indemnifiable Loss which does not result from a Third Party Claim." The losses suffered by Rand give rise to a Direct Claim.

The grounds for the Direct Claim are as follows. In Section 18 of the Shareholders' Agreement, each of you promised that "[t]his Agreement constitutes the entire contract between the parties with respect to the subject matter of this Agreement." Further, each of you promised that you had not "relied on any representations not explicitly set forth in this Agreement." In the Litigation, however, you sought recovery based on a business plan and other alleged representations that were made prior to the Shareholders' Agreement. Such theories and allegations were contrary to the representation, warranty and covenant contained in Section 18 of the Shareholders' Agreement. Through April of 2007, in connection with the Litigation (and your prior, equally baseless demands), Rand incurred approximately $2 million in attorneys' fees and expenses, including such fees and expenses incurred on behalf of Mason Slaine and Michael Danziger which Rand was required to indemnify. In addition, Rand suffered damages of between $6.5 million and $12.5 million on account of your refusal to permit it to invest in the initial public offering of Information Holdings Inc., which refusal was intended to facilitate the Litigation, and therefore gave rise to an Indemnifiable Loss.

On September 25, 2007, the Appellate Division, First Department, issued a final decision resolving the Litigation in favor of the Defendants. This letter shall therefore constitute notice of a Direct Claim pursuant to Section 20(b)(iii) of the Shareholders' Agreement.

Please direct any response to this demand to Rand's counsel, Francis Carling, c/o Collazo Carling & Mish LLP, 747 Third Avenue, New York, NY 10017-2803.

Very truly yours,

Michael Danziger
President

cc:  David Selengut, Esq.
     c/o Ellenoff Grossman & Schole LLP
     370 Lexington Avenue
     New York, NY 10017-6503

     Richard Elkin
     12 Grant Way
     Princeton, NJ 08540-1600

     Antoine and Stacy Bernheim
     1088 Park Avenue
     New York, NY 10128

2