him in the deal, received nearly S5 million (Exhibit I); Slaine arranged for Danziger to purchase securities in IHI and obtain other benefits worth in excess of S3 million, as well as to become a director of IHI; Slaine and Danziger are as inseparable as siamese twins and it would defy reality to believe that Danziger would do anything to hurt his friend and mentor, Slaine, who has helped him make millions of dollars and who has invited him to participate in the spoils gained individually to Slaine through the IHI venture.

(f)     In order to attempt to prevent the lawsuit, Slaine and Danziger have fabricated a claim that Bell, at a meeting in July 1998, agreed that Danziger was an independent director who could and should decide if an action should be brought against Slaine. This is pure fabrication.

(g)     Slaine and Danziger claimed on September 11, 1998 (Exhibit D) that they were resigning as officers and directors of Rand. If, in fact, they did resign, they have no standing as directors. If the representation they made that they were resigning was false and they now claim to have remained as directors, then if they were going to vote, the two of them would control Rand and obviously would not vote to bring a lawsuit against themselves. The only independent director, and only director who has not resigned, Martin Bell, has directed that this lawsuit be brought and include Danziger as a defendant.

(h)     Slaine and Danziger, the known wrongdoers and beneficiaries of the wrongdoing complained of herein, are in a position to, and do and did, dominate and control the board of directors of Rand until they claimed to resign on September 11, 1998.

Defendants Slaine and Danziger were responsible for the breach of their fiduciary duties and usurpation of corporate opportunities complained of herein.

      (i)    According to Exhibit C, Slaine received at least 2,379,563 shares of IHI as well as options and other benefits, and Danziger received 91,106 shares of IHI and became a director of IHI.

      (j)    Thus, Rand's board of directors, assuming Slaine and Danziger were part of it in October 1998 and now claim not to have resigned in September 1998, could not exercise independent objective judgment in deciding whether to bring this action nor vigorously prosecute this action.

      (k)    A majority of Rand's directors participated in, acquiesced in, and approved the wrongs alleged herein, and did so in affirmative violation of their duties to Rand and its stockholders and have permitted the wrongs alleged and/or have remained inactive although they had had knowledge or notice of those wrongs. Slaine and Danziger, as the only inside members of the Company's board of directors, throughout the relevant period, knew of the wrongdoing alleged herein but failed to take the appropriate steps to prevent harm to Rand and its shareholders. In fact, Slaine and Danziger were the wrongdoers.

      (l)    Because of their participation in the usurpation of corporate opportunities and breach of fiduciary duties, the directors, if in fact Slaine and Danziger did not resign as they claimed they did (Exhibit D), are in no position to prosecute this

action. Each of them is in a position of irreconcilable conflict of interest in terms of the prosecution of this action. Neither Slaine nor his friend and associate Danziger could or would prosecute an action on behalf of Rand and its shareholders against Slaine and Danziger, in essence themselves, for the wrongdoing alleged herein. Neither Slaine nor Danziger nor their attorneys could be expected to carry out such a task in an impartial manner and the only other director, Martin Bell, has approved of the lawsuit to be brought.

(m)    Slaine and Danziger, who controlled the board of Rand, assuming they now claim not to have resigned on September 11, 1998 (Exhibit D), cannot defend their actions by any alleged "'independent" business judgment since each of them is responsible for the present financial and operational circumstances of Rand, acted with gross negligence, acted in bad faith, grossly and recklessly abused their discretion, acted in breach of their fiduciary duties to Rand and its stockholders and failed to act and abdicated their functions and duties as directors and officers of Rand.

(n)    Slaine and Danziger are now seeking to cover up their fraudulent conduct and to conceal what had occurred by seeking to liquidate and dissolve Rand (Exhibit D).

(o)    The only remaining and independent director, Martin Bell, has specifically authorized this lawsuit to be brought and to include Danziger as a defendant.

(p)    If Rand is required to name IHI as a defendant following discovery from Slaine, Danziger and others, which it is anticipated may occur, Slaine and Danziger

15

would have a direct conflict of interest and it would therefore behoove them to prevent any lawsuit being brought against IHI in order to protect themselves and IHI of which they are now substantial shareholders and directors.

(q)    Slaine and Danziger -- as defendants in this action, where the plaintiffs are seeking to recover damages suffered by Rand, to wit, among other alternatives, profits received by IHI from purchasing the publishing entities, including the niche publishing businesses, which rightfully belonged to Rand, and to have Slaine and Danziger turn over their shares to Rand, as well as any other benefits they received from IHI – would have a direct conflict of interest because they would in essence be asked to bring a lawsuit against themselves and therefore any demand on them to do so would be completely futile.

## SLAINE'S AND DANZIGER'S WRONGFUL COURSE OF CONDUCT

37.    On December 30, 1993, plaintiffs, Mason Slaine and Michael Danziger entered into the Agreement (Exhibit A) with Rand and the plaintiffs.

38.    Pursuant to the Agreement, on January 4, 1994, plaintiffs purchased 144 shares of Rand stock for $3.6 million, thus acquiring a 50% interest in Rand and the right to nominate one member of Rand's board of directors, and they did appoint Martin Bell as a director.

39.    Plaintiffs were induced to enter into the Agreement and to purchase stock of Rand based on Slaine's and Danziger's representations that, utilizing their experience expertise and business contacts in the information/ publishing industry they would pursue

16

investments in information/publishing and particularly in niche publishing, for the benefit of plaintiffs as shareholders in Rand. Slaine and Danziger had made such representations in personal, face-to-face meetings and in telephone calls with plaintiffs throughout the latter half of 1993 in order to solicit their investment in Rand. These representations were made in late 1993 while Slaine and Danziger were seeking to have the individual plaintiffs invest $3.6 million in Rand which was at that time exclusively owned by Slaine and Danziger (Exhibit A). Statements were made both in personal meetings and in telephone conversations to Martin Bell, J. Morton Davis and Richard Elkin.

40.    Pursuant to the Agreement, defendant Slaine retained 72 shares of Rand and his friend and associate, defendant Danziger retained 72 shares as well. Slaine and Danziger thus each held 25% of Rand's outstanding shares, and, together, held 50%, of Rand's outstanding shares and thus controlled Rand.

41.    That Slaine and Danziger understood they were to seek niche publications for Rand is made clear in the quarterly reports to the shareholders about their purported pursuit of corporate opportunities for Rand in the publishing field. Each of these communications confirmed that Rand's line of business was the development and acquisition of publishing and information database companies.

42.    In the first such report, for example, dated April 21, 1994, Slaine and Danziger wrote to Rand's outside director about the launch of Hospitality Data Systems, a business

"compiling a database of companies and associations that regularly hold conferences and other meetings." (Exhibit B).

43.     On June 30, 1994, Slaine wrote in his quarterly report about the dimming prospects for Financial Technology Review (Rand's then only existing publication) and his recommendation not to continue that business and instead make new investments in publishing and information database companies. Slaine wrote: "We are also aggressively pursuing acquisitions."

44.     On July 18, 1994, Slaine wrote to confirm that publication of Financial Technology Review had been suspended. He also wrote:

> Our search for acquisition continues. Interestingly enough, two of the deals we turned down were subsequently acquired by John Wiley & Sons [an information/ publishing company]. I am glad to have higher standards than they!

45.     On January 30,1995, Slaine and Danziger jointly wrote Rand's investors, reporting that Hospitality Data Services "has made significant progress". They also wrote:

> In the meantime, we have invested $1.25 mm of our [Rand's] remaining unspoken for cash in the partial purchase of Progressive Grocer Associates (PGA). PGA publishes Progressive Grocer and Frozen Food Age magazines. We anticipate that this will be a very successful investment for Rand.

46.     Slaine and Danziger failed to disclose at the time of this investment that Slaine was chairman and a principal owner of PGA, thus beginning a pattern of duplicitous

18

behavior that would culminate in their misappropriating the IV opportunity for themselves.

47.    On October 15, 1995, Slaine wrote in his report for the third quarter of 1995 that the PGA investment "performed well" but that Hospitality Data Services "had a difficult third quarter." Slaine wrote: "We have about $1.2M in cash and are reviewing potential acquisitions, particularly in the soft-ware area."

48.    For the year ended December 31, 1995, Slaine wrote to Rand investors that PGA was doing well and that HDS was approaching break-even cash flow. Slaine wrote that Rand still had $1.2 million in the bank: "So, financially we are in good shape and can make another significant investment, although nothing is imminent.

49.    On April 15, 1995, Slaine wrote that he and Danziger had decided to close down Hospitality Data Services, that PGA continues to do well, and that Rand was "also launching a new magazine in the retail technology field." Slaine reiterated that Rand still had $1.2 million cash.

50.    On July 26, 1996, Slaine wrote:

> Dear Rand Publishing Investor
>
> Enclosed are the financial statements for the first half of 1996.
>
> During the second quarter we terminated the operations of HDS [Hospitality Data Services], and the effect of this is included in the financial statements. Progressive Grocer Associates

continues to progress and we are launching a
new magazine - RT the Magazine of Retail
Technology. We are very excited about the
prospects of this new launch.

We continue to look aggressively for
opportunities to deploy our investments funds.
A major investment in a large Florida based
publishing company was researched in great
detail, including significant due diligence by our
accountants, but in the end we decided not to
proceed.

51.     On October 24, 1996, while Slaine was already negotiating with Warburg to

join IV, a directly competing company to Rand, Slaine wrote to Rand investors:

Mike Danziger and I have been active in
pursuing investments for our remaining funds.
We have been close on two occasions but haven't
concluded a deal. Currently we are reviewing
three investments in the newsletter, book, and
electronic areas.

52.     Following the end of 1996, when Slaine had already joined IV, to conceal his

wrongful acts Slaine wrote to Rand investors:

During the fourth quarter of 1996 Mike
[Danziger] and I actively reviewed several
acquisition investment candidates. The leading
candidate was a company called Kleinrock that
was an electronic publisher of tax and
accounting information on CD Rom. This was a
very profitable and growing business and we
made a serious offer. We offered approximately
$5,250,000 based on our cash position of
$1,300,000 and a potential $4,000,000 loan
commitment from State Street Bank. Despite

20

many rounds of negotiations we were in the end outbid by two large publishing groups.

We also pursued an educational magazine publisher called **Technology in Higher Education**. In this case their [sic] were serious management issues that proved to be an obstacle during due diligence. Other investment opportunities did not progress as far as those mentioned above.

Mike [Danziger] and I continue to look for new opportunities but are finding it ever harder to locate and close on acquisitions and investments in the information/ publishing areas given our very limited cash resources. We are competing with many companies with almost unlimited resources.

53.    This was all willfully misleading since at that time Slaine with Danziger's

assistance, had already formed an arrangement with Warburg Pincus to form IHI's

predecessor, IV, which was a direct competitor to Rand, and did not reveal what entities

in the publishing business he was purchasing for IV.

54.    Danziger failed to correct the statements made by Slaine that Danziger and

Slaine were continuing to look for opportunities for Rand but could not find any, and failed

to reveal the formation of IV in December 1996 and the fact that Slaine was actively looking

for investment for IV rather than for Rand, and that Danziger was not looking for any

investments at all for Rand.

21

55.    Upon information and belief, although IV was formally formed in December 1996, Slaine and probably Danziger, had met with Warburg Pincus prior to that time to discuss forming the joint venture and thus the statements made by Slaine and Danziger some several months prior thereto, that no opportunities could be found for Rand, are also false.

56.    Slaine and Danziger failed to mention and concealed the fact that in January 1997, Information Ventures had successfully acquired CRC Press, located in Florida, from the Times Mirror Company.

57.    Slaine and Danziger had not brought the opportunity to Rand, although it clearly was within Rand's mandate. Instead, Slaine and Danziger had turned the opportunity to their own gain through IHI without disclosing this fact to Rand's shareholders.

58.    Slaine and Danziger's belated argument that Rand did not have sufficient funds to make certain investments is simply false since Rand had wealthy investors who were never asked or given the opportunity to put up more money, borrow funds, or as in the past if appropriate associate themselves with another investor or group of investors.

59.    Slaine wrote again to Rand investors following the close of the first quarter of 1997, saying:

> Mike and I continue to look for additional investments for Rand, but it remains very difficult given our limited cash position and the

22

vast competition for investments in the information/ publishing industry.

60.    Again Slaine failed to disclose his formation of IV and his continuing acquisitions in the information/ publishing industry for IV and his own profit rather than for Rand, despite his duties as a director, officer and controlling shareholder of Rand.

61.    Slaine wrote to Rand investors on July 29, 1997:

> There was little financial activity during this period. Mike [Danziger] and I, however, have looked at several investment opportunities and hopefully will find a suitable investment for our cash during the second half of 1997.

62.    Slaine once more failed to disclose his formation of IV and his continuing acquisitions in the information/ publishing industry for IV and his own profit rather than for Rand, despite his duties as a director, officer and controlling shareholder of Rand.

63.    During the first half of 1997, Slaine, with the assistance and at least knowledge of Danziger – who concealed this information from the plaintiffs and Martin Bell, the only independent director – had acquired for IV and for their own gain St. Lucie Press, a publisher of professional titles, and Auerbach, a well-known provider of technology-oriented print and electronic subscription-based products.

64.    In July 1997, Slaine, with the assistance, and at least knowledge of Danziger – who concealed this information from the plaintiffs and Martin Bell, the only independent

director – acquired, for IV, MicroPatent, a leading source of intellectual property information products and services.

65.     Slaine and Danziger had utilized none of these opportunities for Rand; instead, Slaine and Danziger, in breach of their fiduciary duties as directors, officers, and controlling shareholders of Rand, turned them to their own profit.

66.     Slaine acquired his personal interest in IV for no more than $1.663 million in December 1996. As Slaine stated in his letter to Rand investors for the end of the year 1996, Rand had available for investments "$5,250,000 based on our cash position of $1,300,000 and a potential $4,000,000 loan from State Street Bank."'

67.     Thus, Rand was plainly in a position to invest in Information Ventures at least to the same extent as Slaine and Danziger and to participate in IV's growth and acquisitions in the information/ publishing industry. But Slaine and Danziger breached their fiduciary duties and usurped these corporate opportunities for their own profit and for the profit of IHI and Warburg.

68.     Rand was also in a position to purchase those publications which Slaine deviously purchased for IV since Rand had cash, was able to borrow money as had previously been done to purchase properties, and its investors, if asked, would have raised additional money to purchase publications at a reasonable price but were never given the opportunity to do so.

69.    According to the prospectus and registration statement for IVs, which has been reformed as IHI, filed with the Securities Exchange Commission in June, 1998, IHI "depends principally upon efforts of Mason P. Slaine, its co-founder, President and Chief Executive Officer." The prospectus also states:

> The Company is a rapidly growing information publishing business focused on providing need-to-have information to professional and academic end-users in attractive <u>niche markets.</u> The Company was formed to capitalize on management's proven experience in acquiring <u>information publishing businesses</u> and then increasing profitability through a combination of organic revenue growth and improved operating efficiencies. (Emphasis added)

70.    For a year and a half, Slaine and Danziger continued to deceive Rand's independent director, Martin Bell, as well as Rand's shareholders, about the creation of IV, now known as IHI, and Slaine and Danziger's association with IHI.

71.    On April 27, 1998, Slaine wrote to Rand investors that Rand had purchased 166,667 shares of Fame Information Services, Inc. (""Fame") for $500,000. Fame is principally controlled by E.M. Warburg, Pincus & Co. In a telephone conversation in July, 1998 with Martin Bell, Danziger stated that Warburg Pincus permitted Rand to invest in Fame in order to secure the services of Mason Slaine as a director of Fame. Not a word was mentioned about the fact that Warburg Pincus and Slaine had in December 1996 formally

formed a competing venture now known as IHI. This, too, was part of the defendants' cover-up.

72.    In a telephone conversation in July, 1998 with plaintiffs' representative and independent director, attorney Martin A. Bell, Danziger recommended that Rand use its approximately $800,000 cash on hand and approximately $2.5 million cash it anticipates receiving upon the sale of PGA to invest in the IPO of IHI, and Danziger attempted to justify such potential investment by Rand in IHI by stating that the original purpose of Rand was "to invest in Mason." He failed to explain why this same reasoning did not compel Slaine to make his original investment in Information Ventures through Rand rather than misappropriating this for himself personally, IHI and Warburg or why Slaine had not purchased these assets for Rand rather than IHI.

73.    In a subsequent telephone conversation in July, 1998 with the aforesaid Martin A. Bell, Slaine confirmed that Danziger was "'absolutely" correct when he stated that the original purpose of Rand was to invest in Slaine.

74.    In that same telephone conversation in July, 1998, Slaine stated that the underwriters of the IPO could be assured that Rand would not "flip" any potential investment in the IPO because Slaine would not permit Rand to do so, admitting "'I control Rand."

75.    In light of the fact that Rand had its opportunity misappropriated by Slaine and Danziger individually, the independent director of Rand, Martin Bell, and its

26

shareholders did not believe it proper for them to invest in the IPO of IHI since this would put them into the same conflict of interest situation as Slaine and Danziger and they therefore declined the belated invitation to invest.

76.    It should be noted that Slaine acquired an interest in IHI for no more than $1.663 million which is now worth $70 million, and at the time of the IPO plaintiffs were belatedly offered a chance to invest at a price far above, approximately fifteen times, the price for which Slaine had acquired his interest.

### AS AND FOR A FIRST CAUSE OF ACTION
### AS AGAINST DEFENDANTS RAND, SLAINE AND DANZIGER

77.    Plaintiffs hereby repeat, reiterate and reallege each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

78.    This claim is brought derivatively by plaintiffs on behalf of Rand against Slaine and Danziger.

79.    In total disregard of their duties as directors, officers and controlling shareholders of Rand, for their own profit and gain, Slaine and Danziger usurped to themselves the corporate opportunities described above, failing to invest Rand's financial resources in these opportunities for the benefit of Rand's shareholders.

80.    Before commencing this action, plaintiffs did not make any demand upon the defendant corporation through its officers or board of directors that it commence an action against Slaine and Danziger because such demand would be futile and unavailing

27

inasmuch as, assuming Slaine and Danziger did not resign on September 11, 1998 as they

claimed, Slaine and his business partner and associate, the co-defendant Danziger are the

only officers of Rand, hold two of the three seats on Rand's board of directors, and are thus

in control of Rand such that it would not bring an action against Slaine and Danziger. The

only independent director of Rand, Martin Bell, has specifically authorized this lawsuit to

be brought and to include both Slaine and Danziger as defendants.

81.    Plaintiffs have been injured as a result of Slaine's and Danziger's usurpation

of corporate opportunities. Plaintiffs, as derivative representatives of Rand, seek all

damages as permitted by law not to exceed $150 million, and other relief from defendants

as hereinafter set forth.

## AS AND FOR A SECOND CAUSE OF ACTION
## AS AGAINST DEFENDANTS RAND, SLAINE AND DANZIGER

82.    Plaintiffs hereby repeat, reiterate and reallege each of the foregoing

allegations with the same force and effect as if more fully set forth at length herein.

83.    This claim is brought derivatively by plaintiffs on behalf of Rand against

Slaine and Danziger.

84.    As directors, officers and controlling shareholders of Rand, Slaine and

Danziger were and are fiduciaries of Rand and of all of its shareholders and owed them

the duty to conduct the business of Rand candidly, loyally, faithfully, fairly and diligently.

These claims are asserted based on Slaine's and Danziger's acts in violation of applicable

state law and common law, which acts constitute gross, reckless and willful breaches of their fiduciary duties.

85.    Specifically, Slaine and Danziger owed Rand and plaintiffs as shareholders the duty to disclose conflicts of interest and to place the development and advancement of Rand above their own personal financial gain.

86.    In soliciting plaintiffs' investment, Slaine and Danziger had committed themselves to diligently investigating and acquiring interests in the information/ publishing industry. Utilizing their experience, expertise and business contacts in the information/ publishing industry to pursue investments in information/ publishing for the benefit of plaintiffs as shareholders of Rand was Slaine's and Danziger's fiduciary duty.

87.    Contrary to their commitment and representations and their fiduciary duties to plaintiffs as directors, officers and controlling shareholders of Rand, Slaine, with the assistance, aiding and abetting of Danziger, failed to disclose conflicts of interest, did not act with candor toward plaintiffs as shareholders of Rand, and failed to place the interests of Rand's shareholders and Rand above their own. Instead, as alleged herein, without disclosing to plaintiffs their wrongful activities, Slaine created or helped create a new investment vehicle for himself and Danziger in conjunction with Warburg Pincus and acquired businesses in the information/ publishing industry for their own gain that should have been acquired for Rand.

88. By reason of the foregoing, Slaine and Danziger breached their fiduciary obligations to Rand and its shareholders.

89. Plaintiffs have been injured as a result of Slaine's and Danziger's breach of their fiduciary obligations. Plaintiffs, as derivative representatives of Rand, seek damages and other relief for Rand as hereinafter set forth and to exclude Slaine and Danziger from any such recovery due to their fraudulent conduct and breach of their fiduciary duties.

### AS AND FOR A THIRD CAUSE OF ACTION
### AS AGAINST DEFENDANTS RAND, SLAINE AND DANZIGER

90. Plaintiffs hereby repeat, reiterate and reallege each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

91. This claim is brought derivatively by plaintiffs on behalf of Rand against Slaine and Danziger.

92. All of Slaine and Danziger's shares in IHI, options and other benefits, be deemed to be held in constructive trust for the benefit of plaintiffs and that the defendants Slaine and Danziger be required to place all of their shares, options and other benefits, into a constructive trust for the plaintiffs" benefit.

### AS AND FOR A FOURTH CAUSE OF ACTION
### AS AGAINST DEFENDANTS SLAINE AND DANZIGER

93. Plaintiffs hereby repeat, reiterate and reallege each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

94.     Slaine and Danziger converted to themselves and for IHI and Warburg valuable assets rightfully belonging to Rand.

95.     Due to the defendants' conversion of these assets which included the purchase of niche publishing companies, and the obtaining of shares in IHI, Rand has been damaged.

96.     Among other things, Rand is entitled to recover the value of Slaine's and Danziger's shares in IHI, any benefits they received, and damages caused to Rand, to wit, the value of the niche publishing companies purchased and profits generated on them from the period they were obtained and into the future; the exact amount is not currently known to plaintiffs but it is believed to be in excess of $150 million.

97.     Plaintiffs are also entitled to recover whatever damages plaintiffs are able to prove after discovery has been had and the value of what the defendants converted has been revealed as well as punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION
## AS AGAINST DEFENDANTS SLAINE AND DANZIGER

98      Plaintiffs hereby repeat, reiterate and reallege each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

99.     Plaintiffs are seeking to have the Court appoint Martin Bell, the only independent and remaining director of Rand (Exhibit D) as a receiver for Rand.

100.    Upon the appointment of a receiver, plaintiffs are seeking to have Rand undergo a common law dissolution as being in the best interests of Rand once the litigation as against Slaine and Danziger and possibly others who may be responsible such as the attorneys for Rand who aided and abetted Slaine and Danziger in their fraudulent conduct, and/or IHI, has been resolved.

101.    Defendants Slaine and Danziger had previously sent out a notice seeking such a dissolution (Exhibit D); they have advised plaintiffs and the Court that the company Rand is now dormant and that Slaine and Danziger have resigned, and have further claimed that the company has suffered by reason of not being able to be dissolved.

102.    Despite this, Slaine and Danziger have done nothing since September 1998 to attempt to complete the dissolution of the company.

103.    By reason of the foregoing, plaintiffs are entitled to have Martin Bell appointed as a receiver, to have Rand dissolved following the termination of the litigation against Slaine and Danziger, and possibly IHI, the attorneys who aided and abetted Slaine and Danziger, as well as any others who may be found responsible.

104.    Plaintiffs are seeking a dissolution because of the oppressive conduct of Slaine and Danziger who have controlled Rand as against the plaintiff minority shareholders and thus a common law dissolution is being sought rather than a dissolution pursuant to the Business Corporation Law.

## AS AND FOR A SIXTH CAUSE OF ACTION
## AS AGAINST THE WARBURG PINCUS ENTITIES

105.    Plaintiffs hereby repeat, reiterate and reallege each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

106.    This claim is brought derivatively by plaintiffs on behalf of Rand against the Warburg Pincus entities.

107.    Warburg Pincus Ventures, LF was admittedly aware of Slaine's and Danziger's position with Rand and their obligations to the plaintiffs.

108.    Despite Warburg Pincus's admitted knowledge of the existence of a valid contract between Slaine and Danziger and the plaintiffs, the defendant sought to and did intentionally interfere with that contract.

109.    Warburg Pincus induced and conspired with Slaine and Danziger to breach their contract with and obligations to the plaintiffs. This is admitted by Sidney Lapidus, managing director of E.M. Warburg, Pincus & Co., LLC as confirmed by letter dated July 14,1998 (Exhibit J).

110.    As a result of the Warburg Pincus defendants' intentional and tortious interference with the plaintiffs' contract with Slaine and Danziger, that contract was caused to be breached and plaintiffs were caused to be damaged as aforesaid.

111.    Among other things, plaintiffs were deprived of their interest and benefit of IHI; these defendants' acts have now caused Rand to be, in essence, destroyed, and Slaine

and Danziger, Rand's key employees, to leave; future prospects for Rand have been destroyed; the benefits that the plaintiffs could receive from IHI and/or Rand have been destroyed; Rand has been deprived of the benefits of the companies purchased for IHI rather than for Rand; and plaintiffs have been otherwise damaged, all of which damages are continuing into the future.

112.    The conduct of the Warburg Pincus entities and their agents was willful, deliberate and malicious and in violation of public policy and common decency, thus entitling the plaintiffs to recover punitive damages, all of which is not to exceed $500,000,000.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### AS AGAINST THE WARBURG PINCUS ENTITIES

113.    Plaintiffs hereby repeat, reiterate and reallege each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

114.    That the Warburg Pincus entities conspired with and aided and abetted Slaine to defraud Rand and its shareholders.

115.    Knowing that Slaine was bound to Rand to purchase publications which were suitable for Rand, Warburg conspired with Slaine and assisted, aided and abetted him to purchase publications suitable for Rand for IV instead and for Slaine in return to become a substantial shareholder in IV, now known as IHI.

34

116.    Warburg failed to notify Rand or the plaintiffs of its arrangement with Slaine or to obtain its consent for that arrangement.

117.    With respect to another company known as "Fame" in which Warburg was involved with Slaine, they and Slaine sought to have the shareholders consent to have Rand invest in "Fame" in April 1998, to thus further conceal Warburg's relationship with Slaine with respect to IV.

118.    Had Warburg revealed its relationship with Slaine and that Slaine and Warburg were depriving Rand of the opportunity to purchase certain publications which Slaine was purchasing for IV, Rand would have or could have taken action immediately upon becoming aware of this.

119.    As a result of the fraudulent conduct of Warburg in aiding and abetting Slaine, plaintiffs have been damaged in that among other things, plaintiffs were deprived of their interest and benefit of IHI; these defendants' acts have now caused Rand to be, in essence, destroyed, and Slaine and Danziger, Rand's key employees, to leave; future prospects for Rand have been destroyed; the benefits that the plaintiffs could receive from IHI and/or Rand have been destroyed; Rand has been deprived of the benefits of the companies purchased for IHI rather than for Rand; and plaintiffs have been otherwise damaged, all of which damages are continuing into the future.

120.    The conduct of the Warburg Pincus entities and their agents was willful, deliberate and malicious and in violation of public policy and common decency, thus

entitling the plaintiffs to recover punitive damages, all of which is not to exceed $500,000,000.

### Jury Trial Demanded

121.    Plaintiffs demand a trial by jury.

### Prayer for Relief

WHEREFORE, plaintiffs pray for judgment as follows:

(i)    That Slaine and Danziger be charged with any losses to Rand as a result of their malfeasance, bad faith, breach of trust, usurpation of corporate opportunities, and breach of fiduciary duties as set forth in the complaint.

(ii)    That a constructive trust for the benefit of plaintiffs be established upon any shares and all proceeds of Slaine and Danziger from the IPO of IHI and any sale of IHI stock thereafter, and an accounting required for any profits realized by Slaine and Danziger as a result of their wrongful actions, including but not limited to the usurpation of corporate opportunities as alleged herein; that Slaine and Danziger be precluded from participating in any recovery because of their fraudulent conduct and breach of their fiduciary duties;

(iii)    That Martin Bell the only remaining and independent director of Rand be appointed as receiver for Rand and upon such appointment Rand be dissolved, following the termination of this and other litigation on behalf of Rand arising out of said wrongful acts;

36

(iv)    That plaintiffs be awarded a judgment as against the Warburg Pincus entities of actual and punitive damages in an amount not to exceed the sum of Five Hundred Million Dollars (S500,000,000;

(v)    That plaintiffs be awarded their costs and disbursements in bringing this action, including reasonable attorneys' and experts' fees; and

(vi)    That the Court award such other and further relief as to this Court may seem just and proper.

Dated: New York, New York
        October 17, 2001

JAROSLAWICZ & JAROS, ESQS.
Attorneys for Plaintiffs
150 William Street
New York, New York 10038
(212) 227-2780

By: _____
                David Jaroslawicz

TO:

PILLSBURY WINTHROP, LLP
Attorneys for Defendant Rand
One Battery Park Plaza
New York, New York 10004-1490

GREENBAUM, ROWE, SMITH,
  RAVIN, DAVIS & HIMMEL, LLP
Attorneys for Defendant Danziger
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, New Jersey 07095-0988

COLLAZO CARLING & MISH, LLP
Attorneys for Defendant Slaine
747 Third Avenue
New York, New York 10017

WILLKIE, FARR & GALLAGHER
Attorneys for Defendants Warburg Pincus and E.M. Warburg
787 Seventh Avenue
New York, New York 10019

DAVID JAROSLAWICZ, a member of the firm of JAROSLAWICZ & JAROS, attorneys for the plaintiff(s) in the within action, duly admitted to practice in the Courts of the State of New York, affirms the following statements to be true under the penalties of perjury, pursuant to Rule 2016 of the CPLR:

That he has read the foregoing Amended Complaint and knows the contents thereof; that the same is true to his own knowledge except as to those matters therein stated to be alleged upon information and belief, and that as to those matters, he believes them to be true.

Affiant further states that the source of his information and the grounds of his belief are derived from the file maintained in the normal course of business of the attorneys for the plaintiff(s).

Affiant further states that the reason this affirmation is not made by the plaintiff(s) is that at the time this document was being prepared, the plaintiff(s) was (were) not within the County of New York, which is the County where the attorney for the plaintiff(s) herein maintains his office.

Dated:    New York, New York
          October 18, 2001

                                        _____
                                        DAVID JAROSLAWICZ

JAROSLAWICZ & JAROS, ESQS.
Attorneys for Plaintiff
150 William Street
New York, New York 10038
(212) 227-2780

# EXHIBIT "E"

**187**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

VENTURETEK, L.P., RICHARD ELKIN, ANTOINE
BERNHEIM, STACY BERNHEIM, and GENSTAR,
LTD., derivatively as shareholders of Rand Publishing
Co., Inc.,

                    Plaintiffs,

           - against -

RAND PUBLISHING COMPANY, INC., MASON
P. SLAINE, MICHAEL E. DANZIGER, WARBURG
PINCUS VENTURES, L.P. and E.M. WARBURG,
PINCUS & CO., LLC,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

Index No. 605046/98
Justice Cahn

**VERIFIED ANSWER OF
MASON P. SLAINE TO
THE SECOND AMENDED
COMPLAINT**

       Defendant Mason P. Slaine, by his attorneys, Collazo Carling & Mish LLP, for his

answer to the Second Amended Complaint herein:

    1.     Admits the allegations in paragraph 1.

    2.     Denies the allegations in paragraph 2.

    3.     Denies the allegations in paragraph 3.

    4.     Refers to the Agreement for Issuance and Sale of Stock for its terms, and

otherwise denies the allegations in paragraph 4.

    5.     Admits that he, defendant Danziger and some or all of the plaintiffs had been

involved in various business ventures together since 1987, including, among others, Rand

Communications, Inc. and Rand Data Services, Inc., and otherwise denies the allegations in

paragraph 5.



EXHIBIT S

**188**

6.    Admits that he and Danziger were employed by some of the same employers, and held offices in some of the same companies, at various times after 1984, and otherwise denies the allegations in paragraph 6.

7.    Denies the allegations in paragraph 7.

8.    Avers that the first two sentences in paragraph 8 state conclusions of law rather than allegations of fact, and as such, require no answer; denies that he breached any duty to the plaintiffs; and otherwise denies the allegations in paragraph 8.

9.    Avers that the first two sentences in paragraph 9 state conclusions of law rather than allegations of fact, and as such, require no answer; denies that, to his knowledge, Danziger breached any duty to the plaintiffs; and otherwise denies the allegations in paragraph 9.

10.    Denies the allegations in paragraph 10.

11.    Avers that his investment commitment to Information Ventures was $5 million; denies that Rand had more than $1.663 million in cash at the time in question; denies that Rand would have been permitted to invest in Information Ventures in any event; and otherwise denies the allegations in paragraph 11.

12.    Denies the allegations in paragraph 12.

13.    Denies the allegations in paragraph 13.

14.    Denies the allegations in paragraph 14.

15.    Admits the allegations in paragraph 15.

16.    Admits that IHI is listed on the New York Stock Exchange and that Danziger became a member of its Board of Directors, and denies the remaining allegations in paragraph 16.

17.    Denies having knowledge or information sufficient to form to belief as to the truth of the allegations in paragraph 17, and accordingly denies those allegations.

18.    Admits the allegations in paragraph 18, except avers that the current value of Slaine's equity in IHI is $28,000,000.

19.    Admits that IHI is not a defendant in this action, and otherwise denies the allegations in paragraph 19.

20.    Denies the allegations in paragraph 20.

21.    Admits the allegations in paragraph 21.

22.    Admits the allegations in paragraph 22.

23.    Denies having knowledge or information sufficient to form to belief as to the truth of the allegations in paragraph 23, and accordingly denies those allegations.

24.    Denies having knowledge or information sufficient to form to belief as to the truth of the allegations in paragraph 24, and accordingly denies those allegations.

25.    Denies having knowledge or information sufficient to form to belief as to the truth of the allegations in paragraph 25, and accordingly denies those allegations.

26.    Denies having knowledge or information sufficient to form to belief as to the truth of the allegations in paragraph 26, and accordingly denies those allegations.

27.    Admits the allegations in paragraph 27.

28.    Admits that Rand is a Delaware corporation; avers that it has no business address or business operations; and denies the remaining allegations in paragraph 28.

29.    Admits the allegations in paragraph 29.

190

30.    Denies having knowledge or information sufficient to form to belief as to the truth of the allegations in paragraph 30, and accordingly denies those allegations.

31.    Admits the allegations in paragraph 31.

32.    Admits the allegations in paragraph 32.

33.    Admits that plaintiffs purport to bring this action derivatively, but denies that they are entitled to do so; and denies the remaining allegations in paragraph 33.

34.    Admits that all the shareholders of Rand are parties to this action, and denies the remaining allegations in paragraph 34.

35.    Denies the allegations in paragraph 35.

36.    Denies the allegations in paragraph 36.

36(a).    Admits that he and Danziger are the only officers of Rand and hold two of the three authorized seats on its board of directors, and denies the remaining allegations in paragraph 36(a).

36(b)(i).    Denies the allegations in paragraph 36(b)(i).

36(b)(ii).    Admits the allegations in paragraph 36(b)(ii).

36(b)(iii).    Admits the allegations in paragraph 36(b)(iii).

36(b)(iv).    Admits the allegations in paragraph 36(b)(iv).

36(b)(v).    Admits that Winthrop, Stimson, Putnam & Roberts (now known as Pillsbury Winthrop LLP) has been one of the law firms which has rendered services in the past to him and Danziger, and to firms in which they were involved, in certain matters; admits that Pillsbury Winthrop LLP represents Rand in this action; admits that Francis Carling was formerly

a partner in the Winthrop, Stimson firm, and that he represents Slaine in this action; and otherwise denies the allegations in paragraph 36(b)(v).

> 36(b)(vi).    Denies the allegations in paragraph 36(b)(vi).

> 36(b)(vii).    Denies having knowledge or information sufficient to form to belief as to the truth of the allegations in paragraph 36(b)(vii), and accordingly denies those allegations.

> 36(b)(viii).    Denies that Slaine arranged for Danziger to become a member of the board of IHI; denies having knowledge or information sufficient to form to belief as to the truth of the allegations concerning other board memberships held by Danziger, and accordingly denies those allegations; and otherwise denies the allegations in paragraph 36(b)(viii).

> 36(b)(ix).    Denies the allegations in paragraph 36(b)(ix).

> 36(b)(x).    Refers to the Danziger testimony cited for its particulars; avers that neither he nor Danziger ever acquired any equity in the company in question; and otherwise denies the allegations in paragraph 36(b)(x).

> 36(b)(xi).    Denies the allegations in paragraph 36(b)(xi).

> 36(b)(xii).    Denies the allegations in paragraph 36(b)(xii).

> 36(b)(xiii).    Denies having knowledge or information sufficient to form to belief as to the truth of the allegations in paragraph 36(b)(xiii), and accordingly denies those allegations.

> 36(b)(xiv).    Admits that he and Danziger are acquaintances, and denies the remaining allegations in paragraph 36(b)(xiv).

> 36(b)(xv).    Denies the allegations in paragraph 36(b)(xv).

**192**

36(b)(xvi).     Denies the allegations in paragraph 36(b)(xvi).

36(c).     Admits that Rand was operated with few formalities; avers that there was no objection from any shareholder to operating in that fashion; and otherwise denies the allegations in paragraph 36(c).

36(d).     Denies the allegations in paragraph 36(d).

36(e).     Admits that he and Danziger have been named as defendants in this lawsuit, and that he and Danziger are directors of IHI, and denies the remaining allegations in paragraph 36(e).

36(f).     Denies the allegations in paragraph 36(f).

36(g).     Refers to Exhibit D to the complaint for its terms, and denies the remaining allegations in paragraph 36(g).

36(h).     Admits that he and Danziger at all relevant times constituted a majority of the board of directors of Rand, and denies the remaining allegations in paragraph 36(h).

36(i).     Avers that Danziger's shares in IHI were purchased on the same terms offered to Rand, and otherwise admits the allegations in paragraph 36(i).

36(j).     Denies the allegations in paragraph 36(j).

36(k).     Denies the allegations in paragraph 36(k).

36(l).     Admits that he is neither independent nor disinterested as a director of Rand with respect to the claims raised in the complaint, and denies the remaining allegations in paragraph 36(l).

36(m).     Admits that he is neither independent nor disinterested as a director of Rand with respect to the claims raised in the complaint, and denies the remaining allegations in paragraph 36(m).

36(n).     Denies the allegations in paragraph 36(n).

36(o).     Denies the allegations in paragraph 36(o).

36(p).     Avers that the allegations in paragraph 36(p) raise a hypothetical that is contrary to fact and does not require a response.

36(q).     Admits that he is neither independent nor disinterested as a director of Rand with respect to the claims raised in the complaint, and denies the remaining allegations in paragraph 36(q).

37.     Admits the allegations in paragraph 37.

38.     Refers to Exhibit A to the complaint for its terms, and denies the remaining allegations in paragraph 38.

39.     Denies the allegations in paragraph 39.

40.     Refers to Exhibit A to the complaint for its terms, and denies the remaining allegations in paragraph 40.

41.     Refers to the quarterly reports for their terms, and denies the remaining allegations in paragraph 41.

42.     Refers to Exhibit B to the complaint for its terms, and denies the remaining allegations in paragraph 42.

43.     Refers to the referenced report for its terms, and denies the remaining allegations in paragraph 43.

-7-

**194**

44.    Refers to the referenced report for its terms, and denies the remaining allegations in paragraph 44.

45.    Refers to the referenced report for its terms, and denies the remaining allegations in paragraph 45.

46.    Denies the allegations in paragraph 46.

47.    Refers to the referenced report for its terms, and denies the remaining allegations in paragraph 47.

48.    Refers to the referenced report for its terms, and denies the remaining allegations in paragraph 48.

49.    Refers to the referenced report for its terms, and denies the remaining allegations in paragraph 49.

50.    Refers to the referenced report for its terms, and denies the remaining allegations in paragraph 50.

51.    Refers to the referenced report for its terms, and denies the remaining allegations in paragraph 51.

52.    Refers to the referenced report for its terms, and denies the remaining allegations in paragraph 52.

53.    Admits that IV was formed in December 1996, and denies the remaining allegations in paragraph 53.

54.    Denies having knowledge or information sufficient to form to belief as to the truth of the allegations in paragraph 54 concerning Danziger's activities, and otherwise denies the allegations in that paragraph.

55.    Admits that IV was formed in December 1996 and that he met with Warburg Pincus and other investor groups prior to that time to discuss a new venture, and denies the remaining allegations in paragraph 55.

56.    Denies the allegations in paragraph 56.

57.    Avers that the opportunity to acquire CRC Press did not come to him, in his capacity as a director of Rand or otherwise, but to Warburg Pincus; admits that he did not bring that opportunity to Rand; and denies the remaining allegations in paragraph 57.

58.    Denies the allegations in paragraph 58.

59.    Refers to the referenced report for its terms, and denies the remaining allegations in paragraph 59.

60.    Denies the allegations in paragraph 60.

61.    Refers to the referenced report for its terms, and denies the remaining allegations in paragraph 61.

62.    Denies the allegations in paragraph 62.

63.    Admits that during the first half of 1997 IV acquired St. Lucie Press and Auerbach, and denies the remaining allegations in paragraph 63.

64.    Admits that during July 1997 IV acquired MicroPatent, and denies the remaining allegations in paragraph 64.

65.    Avers that the opportunities in question did not come to him in his capacity as a director of Rand, admits that he did not bring them to Rand, and denies the remaining allegations in paragraph 65.

**196**

66.     Avers that the cash he invested in IV was not the sole consideration for his stake in that company; admits that the cash he invested was not more than $1.663 million; refers to the referenced report for its terms; and denies the remaining allegations in paragraph 66.

67.     Denies the allegations in paragraph 67.

68.     Denies the allegations in paragraph 68.

69.     Refers to the referenced prospectus and registration statement for its terms, and denies the remaining allegations in paragraph 69.

70.     Denies the allegations in paragraph 70.

71.     Admits the allegations in the first two sentences of paragraph 71; denies having knowledge or information sufficient to form to belief as to the truth of the allegations in that paragraph concerning Danziger's activities; and otherwise denies the allegations in that paragraph.

72.     Denies having knowledge or information sufficient to form to belief as to the truth of the allegations in paragraph 72 concerning Danziger's activities, and accordingly denies the allegations in that paragraph.

73.     Denies the allegations in paragraph 73.

74.     Denies the allegations in paragraph 74.

75.     Admits that plaintiffs declined an opportunity to invest in the initial public offering of IHI, and otherwise denies the allegations in paragraph 75.

76.     Denies the allegations in paragraph 76.

77.     Repeats the admissions, denials and averments in paragraphs 1-76 above.

78.     Denies the allegations in paragraph 78.

**197**

79.    Denies the allegations in paragraph 79.

80.    Admits that plaintiffs made no demand on the directors of Rand to bring this lawsuit, and that he and Danziger are the only officers of Rand and hold two of the authorized seats on its board of directors; and otherwise denies the allegations in paragraph 80.

81.    Denies the allegations in paragraph 81.

82.    Repeats the admissions, denials and averments in paragraphs 1-81 above.

83.    Denies the allegations in paragraph 83.

84.    Avers that the first sentence of paragraph 84 states conclusions of law rather than allegations of fact, and thus requires no response; and denies the remaining allegations in that paragraph.

85.    Avers that paragraph 85 states conclusions of law rather than allegations of fact, and thus requires no response.

86.    Denies the allegations in paragraph 86.

87.    Denies the allegations in paragraph 87.

88.    Denies the allegations in paragraph 88.

89.    Denies the allegations in paragraph 89.

90.    Repeats the admissions, denials and averments in paragraphs 1-89 above.

91.    Denies the allegations in paragraph 91.

92.    Denies the allegations in paragraph 92.

93.    Repeats the admissions, denials and averments in paragraphs 1-92 above.

94.    Denies the allegations in paragraph 94.

95.    Denies the allegations in paragraph 95.

-11-

**198**

96.     Denies the allegations in paragraph 96.

97.     Denies the allegations in paragraph 97.

98-104.     As plaintiffs have indicated to the Court that the Fifth Cause of Action will be withdrawn, no response is required to the allegations in these paragraphs.

105-112.     As the Sixth Cause of Action was dismissed by the Court on July 9, 2002, no response is required to the allegations in these paragraphs.

113.     Repeats the admissions, denials and averments in paragraphs 1-97 above.

114.     Denies the allegations in paragraph 114.

115.     Denies the allegations in paragraph 115.

116.     Admits that Warburg gave no notice to plaintiffs of its arrangement with him, and otherwise denies the allegations in paragraph 116.

117.     Denies the allegations in paragraph 117.

118.     Denies the allegations in paragraph 118.

119.     Denies the allegations in paragraph 119.

120.     Denies the allegations in paragraph 120.

121.     As equitable relief is sought in the complaint, plaintiffs are not entitled to try their claims to a jury.

122.     Plaintiffs are not entitled to any of the relief requested in the "WHEREFORE" clause of the complaint.

<u>First Affirmative Defense</u>

123.     Plaintiffs failed to make due demand on the board of directors of Rand to bring this action, and thus lack standing to sue derivatively on behalf of Rand.

-12-

**199**

### Second Affirmative Defense

124.    Plaintiffs' claims for equitable relief are barred by the doctrine of laches.

### Third Affirmative Defense

125.    Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations.

WHEREFORE, Slaine prays that the complaint be dismissed in its entirety, with prejudice, that he be awarded his unreimbursed costs and disbursements in this action, and that he be granted such other and further relief as justice may require.

Dated:  New York, New York
July 31, 2002

COLLAZO CARLING & MISH LLP

By:_____
Francis Carling

Attorneys for Mason P. Slaine
747 Third Avenue
New York, NY 10017-2803
(212) 758-7600

TO:    JAROSLAWICZ & JAROS
150 William Street
New York, NY 10038

POMERANTZ HAUDEK BLOCK GROSSMAN & GROSS
100 Park Avenue
New York, NY 10017

PILLSBURY WINTHROP LLP
One Battery Park Plaza
New York, NY 10004-1490

-13-

**200**

GREENBAUM, ROWE, SMITH, RAVIN, DAVIS & HIMMEL LLP
99 Wood Avenue, South
Iselin, NJ 08830-2712

WILKIE, FARR & GALLAGHER
787 Seventh Avenue
New York, NY 10019

<u>V E R I F I C A T I O N</u>

MASON P. SLAINE, being duly sworn, hereby deposes and says that he is a defendant in

this action; that he has read the foregoing Answer to the Second Amended Complaint; and that

the contents thereof are true and correct to the best of his knowledge and belief.

_____
MASON P. SLAINE

Subscribed and sworn to before me
this 31st day of July, 2002.

_____
Notary Public

BARBARA A. HOLLAND
Notary Public, State Of Connecticut
My Commission Expires March 31, 2006

# EXHIBIT "F"

220

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

VENTURETEK, L.P., RICHARD ELKIN,
ANTOINE BERNHEIM, STACY BERNHEIM
and GENSTAR, LTD., individually and as
shareholders of Rand Publishing Co., Inc.,

                              Plaintiffs,

against –

RAND PUBLISHING CO., INC., MASON
P. SLAINE, MICHAEL E. DANZIGER,
WARBURG PINCUS VENTURES, L.P. and
E.M. WARBURG, PINCUS & CO., LLC,

                              Defendants.

Index No. 605046/98
Justice Cahn

**DEFENDANT RAND
PUBLISHING CO., INC.'S
VERIFIED ANSWER TO
SECOND AMENDED
<u>VERIFIED COMPLAINT</u>**

---

      Defendant Rand Publishing Co., Inc. ("Rand"), by its attorneys, Pillsbury Winthrop LLP,

answers the Second Amended Verified Complaint (the "Second Amended Complaint") as

follows:

    1.     Rand admits that pursuant to the written Agreement for Issuance and Sale of

Stock (the "Shareholders' Agreement") attached as Exhibit A to the Second Amended Complaint,

plaintiffs invested $3.6 million in January 1994 to acquire a fifty percent interest in Rand. Rand

further states that Exhibit A speaks for itself and respectfully refers the Court to the

Shareholders' Agreement for a full and accurate statement of its contents.

    2.     Rand admits that Paragraph 2 purports to paraphrase the Shareholders' Agreement.

Rand denies that the Shareholders' Agreement is accurately paraphrased in Paragraph 2. Rand

respectfully refers the Court to the Shareholders' Agreement for a full and accurate statement of

its contents.

    3.     Rand denies the allegations of Paragraph 3.

**221**

4.      Rand admits that the last sentence of Paragraph 4 purports to paraphrase the Shareholders' Agreement.  Rand denies that the Shareholders' Agreement is accurately paraphrased in the last sentence of Paragraph 4.  Rand respectfully refers the Court to the Shareholders' Agreement for a full and accurate statement of its contents.  Rand denies the remaining allegations of Paragraph 4.

5.      Rand admits that Slaine and Danziger had prior involvement with some of the plaintiffs since 1987, including Rand Communications, Inc. and Rand Data Services .  Rand denies that Danziger was involved in Rand Capital Corp. Rand denies that Slaine and Danziger acted "as a unit."

6.      Rand admits that Slaine and Danziger have known each other since 1984, but states that Rand Communications and Rand Data Services were formed in 1987.  Rand admits that Slaine and Danziger were active officers of Rand Communications and Rand Data Services. Rand denies that Slaine acted as Danziger's "mentor."

7.      Rand admits that Slaine and Danziger have been involved in certain business ventures, some of which also involved certain of the plaintiffs or their principals.  Rand denies that Slaine and Danziger "worked as a team" or are "united."

8.      Rand admits that Slaine had a fiduciary duty to Rand as a director and officer of Rand.  Rand avers that the application of that duty to the facts at issue in this case is a point of dispute between Slaine and plaintiffs.  Rand states that the remaining allegations of Paragraph 8 constitute conclusions of law to which no response is required.

9.      Rand admits that Danziger had a fiduciary duty to Rand as a director and officer of Rand and denies that such duty was breached.  Rand states that the remaining allegations of Paragraph 9 constitute conclusions of law to which no response is required.

# 222

10.    Rand denies that Danziger invested in Information Ventures LLC ("IV") or had any opportunity to do so.  Rand lacks sufficient knowledge or information to answer the remaining allegations of Paragraph 10.

11.    Rand lacks sufficient knowledge or information to answer the allegations of Paragraph 11.

12.    Rand lacks sufficient knowledge or information to answer the allegations of Paragraph 12.

13.    Rand denies that Danziger breached his fiduciary duty toward plaintiffs or misappropriated any corporate opportunity.  Rand lacks sufficient knowledge or information to answer the remaining allegations of Paragraph 13.

14.    Rand admits that plaintiffs purport to paraphrase Exhibit B, denies that the paraphrase fully or accurately reflects the contents of Exhibit B, and respectfully refers the Court to Exhibit B for a full and accurate statement of its contents.  Rand denies the allegations of wrongdoing as to Danziger and lacks knowledge of information sufficient to form a belief as to the balance of the allegations of Paragraph 14.

15.    Rand admits, upon information and belief, the allegations of Paragraph 15.

16.    Rand admits that Danziger became a board member of IHI after the events at issue had occurred and after the relevant time for a demand had ended, and denies the remaining allegations of Paragraph 16.

17.    Rand admits the allegations of Paragraph 17.

18.    Rand lacks sufficient knowledge or information to form a belief concerning the value of IHI's stock to answer the allegations of Paragraph 18.

**223**

19.     Rand admits that the allegations of Paragraph 19 purport to state plaintiffs' intentions as to IHI.  Rand lacks sufficient knowledge or information to answer the remaining allegations of Paragraph 19.

20.     Rand denies the allegations of Paragraph 20, including the allegations of wrongdoing by Danziger; however, Rand admits that it would be entitled to recover from Slaine and others in the event that such persons were proven to have engaged in improper conduct that damaged Rand.

21.     Rand admits the allegations of Paragraph 21.

22.     Rand admits that venue is proper.  Rand lacks sufficient knowledge or information concerning plaintiffs' residence and employment to answer the remaining allegations of Paragraph 22.

23.     Rand lacks sufficient knowledge or information to answer the allegations of Paragraph 23.

24.     Rand lacks sufficient knowledge or information to answer the allegations of Paragraph 24.

25.     Rand lacks sufficient knowledge or information to answer the allegations of Paragraph 25.

26.     Rand lacks sufficient knowledge or information to answer the allegations of Paragraph 26.

27.     Rand admits that plaintiffs have been shareholders of Rand at all times relevant to this litigation and denies the remaining allegations of Paragraph 27.

**224**

28.   Rand admits that it is a Delaware corporation and previously used the address c/o

263 Tresser Boulevard, Stamford, CT 06901; and denies the remaining allegations of Paragraph

28.  Rand affirmatively avers that it has no place of business.

29.   Rand admits the allegations of Paragraph 29, except denies that Rand has done

business in New York since 1994.

30.   Rand admits that Danziger is a resident of the State of New Jersey and has

conducted business in the City and State of New York from time to time.

31.   Rand lacks sufficient knowledge or information to answer the allegations of

Paragraph 31.

32.   Rand lacks sufficient knowledge or information to answer the allegations of

Paragraph 32.

33.   Rand admits that plaintiffs purport to sue derivatively; denies that plaintiffs are

entitled to do so; denies the allegations of wrongdoing by Danziger; affirmatively avers that a

demand must be made on Danziger as an independent and disinterested director of Rand; and

denies the remaining allegations in Paragraph 33.

34.   Rand admits that there are no shareholders of Rand other than the plaintiffs and

the individual defendants and denies the remaining allegations of Paragraph 34.

35.   Rand admits that plaintiffs claim that violations of the law occurred and denies

knowledge of such alleged violations.

36.   Rand admits that no demand was made on the board of directors of Rand.  Rand

denies that such demand would be a futile or useless act.

36 (a).        Rand admits that Slaine and Danziger are the only officers of Rand and hold two of the three authorized seats on its board of directors. Rand denies the remaining allegations of Paragraph 36 (a).

36 (b) (i).        Rand denies the allegations of Paragraph 36 (b) (i).

36 (b) (ii).        Rand lacks sufficient knowledge to answer Paragraph 36(b)(ii).

36 (b) (iii).        Rand admits and avers that Danziger was named by Slaine as a trustee for one trust for one of Slaine's three children based on Danziger's intelligence and responsibility. Danziger is not a trustee for any of the other trusts established by Slaine. Rand affirmatively avers that Danziger is not the only trustee, and that primary responsibility rests with State Street Bank, the institutional trustee that handles the actual investments. Rand affirmatively avers that the trust was established 13 years ago in 1989, and that Slaine has no control over Danziger's actions, as trustee or otherwise.

36 (b) (iv).        Rand admits the allegations of Paragraph 36 (b) (iv) but affirmatively avers that Slaine and Danziger were successful in the lawsuit, and affirmatively avers that having been a defendant in a lawsuit in 1987, 15 years ago, does not affect Danziger's independence or disinterestedness.

36 (b) (v).        Rand admits that the predecessor of Pillsbury Winthrop LLP, Winthrop, Stimson, Putnam & Roberts, has rendered services to Slaine and Danziger, and to businesses in which they were involved, for certain matters. Rand admits that it is represented by Pillsbury Winthrop LLP in this action and that Slaine is represented by Francis Carling, admits that Francis Carling is a former partner of Winthrop Stimson Putnam & Roberts, and denies the remaining allegations of Paragraph 36 (b) (v).

36 (b) (vi).        Rand denies the allegations of Paragraph 36 (b) (vi).

226

36 (b) (vii).    Rand denies the allegations of Paragraph 36 (b) (vii).

36 (b) (viii).    Rand admits that Danziger has never been a member of the board of any public company other than IHI.  Rand affirmatively avers that Danziger was not a member of IHI's board of directors at any time relevant to the demand rule.  Rand denies the remaining allegations of Paragraph 36 (b) (viii).

36 (b) (ix).    Rand denies the allegations of Paragraph 36 (b) (ix).

36 (b) (x).    Rand denies the allegations of Paragraph 36 (b) (x) and respectfully refers the Court to Danziger's deposition testimony, for an accurate account of his statements.

36 (b) (xi).    Rand admits the allegations of Paragraph 36 (b) (xi) and affirmatively avers that these allegations are remote in time and irrelevant to Danziger's disinterestedness or independence in this matter.

36 (b) (xii).    Rand denies that Danziger was the individual who hired Slaine's half-brother.  Rand affirmatively avers that these allegations are remote in time and irrelevant to Danziger's disinterestedness or independence in this matter.

36 (b) (xiii).    Rand denies the allegations of Paragraph 36 (b) (xiii) and affirmatively avers that plaintiffs improperly commenced this lawsuit without making a demand upon Danziger, as a director of Rand.

36 (b) (xiv).    Rand denies the allegations of Paragraph 36 (b) (xiv).

36 (b) (xv).    Rand denies the allegations of Paragraph 36 (b) (xv).

36 (b) (xvi).    Rand denies the allegations of Paragraph 36 (b) (xvi).

36 (c).    Rand denies the allegations of Paragraph 36 (c).

36 (d).    Rand denies the allegations of Paragraph 36 (d).

227

36 (e).        Rand lacks knowledge or information sufficient to answer the

allegations concerning IHI. Rand denies the remaining allegations of Paragraph 36 (e). To the

extent that this sub-paragraph purports to cite exhibits to the Second Amended Complaint or

other documents, Rand respectfully refers the Court to those documents for a full and accurate

statement of their contents.

36 (f).        Rand denies the allegations of Paragraph 36 (f).

36 (g).        Rand denies the allegations of Paragraph 36 (g). To the extent that

this Paragraph 36(g) purports to cite to Exhibit D to the Second Amended Complaint, Rand

respectfully refers the Court to that document for a full and accurate statement of its contents.

36 (h).        Rand denies the allegations of Paragraph 36 (h), except admits that

Slaine and Danziger were the only two active directors at all relevant times.

36 (i).        Rand admits that plaintiffs purport to quote from a document

annexed as Exhibit C to the Second Amended Complaint and respectfully refers the Court to that

document for a full and accurate statement of its contents.

36 (j).        Rand denies the allegations of Paragraph 36 (j), and affirmatively

avers that, at all relevant times, Danziger could exercise independent and disinterested judgment.

36 (k).        Rand denies the allegations of Paragraph 36 (k).

36 (l).        Rand admits that Slaine is neither independent nor disinterested as

a director of Rand with respect to the claims raised in the complaint, but avers that such fact

would have no bearing on Danziger's independence and disinterestedness. Rand denies

knowledge or information sufficient to form a belief as to allegations of wrongdoing by Slaine;

denies the remaining allegations of Paragraph 36 (l); and affirmatively avers that, at all relevant

times, Danziger could exercise independent and disinterested judgment. Rand affirmatively

# 228

avers that Slaine would take no part in Rand's consideration of any demand relating to the alleged occurrences underlying the Second Amended Complaint.

36 (m).     Rand admits that Slaine is neither independent nor disinterested as a director of Rand with respect to the claims raised in the complaint, but avers that such fact would have no bearing on Danziger's independence and disinterestedness. Rand denies knowledge or information sufficient to form a belief as to allegations of wrongdoing by Slaine; denies the remaining allegations of Paragraph 36 (m); and affirmatively avers that at all relevant times Danziger could exercise independent and disinterested judgment. Rand affirmatively avers that Slaine would take no part in Rand's consideration of any demand relating to the alleged occurrences underlying the Second Amended Complaint.

36 (n).     Rand denies knowledge or information sufficient to form a belief as to allegations of wrongdoing by Slaine; and denies the remaining allegations of Paragraph 36 (n).

36 (o).     Rand denies the allegations of Paragraph 36 (o).

36 (p).     Rand denies that Danziger is a substantial shareholder of IHI. Rand denies knowledge or information sufficient to form a belief as to Slaine's present shareholding in IHI. Rand denies that plaintiffs have brought a lawsuit against IHI. The balance of Paragraph 36 (p) is a hypothetical argument that does not plead existing facts and thus no response is required.

36 (q).     Rand admits that Slaine is neither independent nor disinterested as a director of Rand with respect to the claims raised in the complaint, but avers that such fact would have no bearing on Danziger's independence and disinterestedness. Rand affirmatively avers that Danziger is both independent and disinterested for purposes of the demand rule. Rand

**229**

lacks sufficient knowledge or information concerning whether the niche publishing businesses referred to rightfully belonged to Rand to answer that allegation in Paragraph 36 (q). Rand denies the remaining allegations of Paragraph 36 (q).

37.    Rand admits the allegations of Paragraph 37.

38.    Rand admits the allegations of Paragraph 38, except lacks sufficient knowledge or information concerning whether plaintiffs appointed Martin Bell as a director and affirmatively avers that it was not notified of such an appointment.

39.    Rand denies the allegations of Paragraph 39. Rand affirmatively avers that the Shareholders Agreement contains an integration clause that states:

> *Entire Agreement.* This Agreement constitutes the entire contract between the parties with respect to the subject matter of the Agreement. Neither party has relied on any representations not explicitly set forth in this Agreement.

In that connection, Rand respectfully refers the Court to paragraph 18 of Exhibit A to the Second Amended Complaint.

40.    Rand admits that, pursuant to the Shareholders' Agreement, Slaine retained 72 shares of Rand and Danziger retained 72 shares of Rand, and that Slaine and Danziger each had 25% of Rand's outstanding shares and together held 50% of Rand's outstanding shares. Rand denies that Danziger is controlled by or beholden to Slaine. Rand affirmatively avers that plaintiffs or their principals were also friends and associates of Slaine and that plaintiffs also held 50% of Rand's outstanding shares and before this lawsuit never expressed an interest in directing the affairs of Rand.

41.    Rand denies the allegations of Paragraph 41.

42.    Rand admits that in Paragraph 42 plaintiffs purport to quote and paraphrase a report previously annexed as Exhibit D to the Affidavit of Martin Bell dated January 12, 1999

**230**

(and not annexed as Exhibit B to the Second Amended Complaint, as alleged by plaintiffs), and Rand respectfully refers the Court to that document for a full and accurate statement of its contents.

43.     Rand admits that in Paragraph 43 plaintiffs purport to quote and paraphrase a report previously annexed as Exhibit E to the Affidavit of Martin Bell dated January 12, 1999, and Rand respectfully refers the Court to that document for a full and accurate statement of its contents.

44.     Rand admits that, in Paragraph 44, plaintiffs purport to quote and paraphrase a report previously annexed as Exhibit F to the Affidavit of Martin Bell dated January 12, 1999, and Rand respectfully refers the Court to that document for a full and accurate statement of its contents.

45.     Rand admits that, in Paragraph 45, plaintiffs purport to quote and paraphrase a report previously annexed as Exhibit G to the Affidavit of Martin Bell dated January 12, 1999, and Rand respectfully refers the Court to that document for a full and accurate statement of its contents.

46.     Rand denies the allegations of Paragraph 46.

47.     Rand admits that, in Paragraph 47, plaintiffs purport to quote and paraphrase a report previously annexed as Exhibit J to the Affidavit of Martin Bell dated January 12, 1999, and Rand respectfully refers the Court to that document for a full and accurate statement of its contents.

48.     Rand admits that, in Paragraph 48, plaintiffs purport to quote and paraphrase a report previously annexed as Exhibit K to the Affidavit of Martin Bell dated January 12, 1999,

and Rand respectfully refers the Court to that document for a full and accurate statement of its contents.

49.    Rand admits that, in Paragraph 49, plaintiffs purport to quote and paraphrase a report previously annexed as Exhibit L to the Affidavit of Martin Bell dated January 12, 1999, and Rand respectfully refers the Court to that document for a full and accurate statement of its contents.

50.    Rand admits that, in Paragraph 50, plaintiffs purport to quote a report among those annexed as Exhibit B to the Second Amended Complaint, and Rand respectfully refers the Court to that document for a full and accurate statement of its contents.

51.    Rand denies that Rand was a competitor of IV at relevant times, and lacks sufficient knowledge and information concerning whether Slaine was negotiating with IV on October 24, 1996 to answer that allegation.  Rand admits that, in Paragraph 51, plaintiffs purport to quote correspondence from Slaine to Rand investors among those annexed as Exhibit B to the Second Amended Complaint, and Rand respectfully refers the Court to that document for a full and accurate statement of its contents.

52.    Rand lacks sufficient knowledge and information concerning the time that Slaine joined IV to answer that allegation.  Rand admits that, in Paragraph 52, plaintiffs purport to quote correspondence from Slaine to Rand investors among those annexed as Exhibit B to the Second Amended Complaint, and Rand respectfully refers the Court to that document for a full and accurate statement of its contents.

53.    Rand lacks sufficient knowledge and information to answer the allegations of Paragraph 53, except Rand denies that Danziger assisted Slaine with respect to IV and denies the allegations of wrongdoing by Danziger.

**232**

54.    Rand denies the allegations of Paragraph 54.

55.    Rand denies the allegations of Paragraph 55 as to Danziger, and lacks sufficient knowledge and information to answer the allegations of Paragraph 55 as to Slaine.

56.    Rand denies any concealment by Danziger, and lacks sufficient knowledge and information concerning any alleged misconduct by Slaine to answer that allegation. Rand lacks sufficient knowledge and information concerning IV's alleged acquisition of CRC Press to answer that allegation.

57.    Rand denies that Danziger had any opportunity to purchase CRC Press, and denies any allegation of wrongdoing by Danziger. Rand lacks sufficient knowledge and information concerning allegations of wrongdoing by Slaine to answer such allegations.

58.    Rand denies the allegations of Paragraph 58.

59.    Rand admits that, in Paragraph 59, plaintiffs purport to quote a communication from Slaine to Rand investors among those annexed as Exhibit B to the Second Amended Complaint, and Rand respectfully refers the Court to that document for a full and accurate statement of its contents.

60.    Rand lacks sufficient knowledge and information to answer the allegations of Paragraph 60.

61.    Rand admits that, in Paragraph 61, plaintiffs purport to quote a communication from Slaine to Rand investors among those annexed as Exhibit B to the Second Amended Complaint, and Rand respectfully refers the Court to that document for a full and accurate statement of its contents.

62.    Rand lacks sufficient knowledge and information to answer the allegations of Paragraph 62.

## 233

63.     Rand denies that Danziger had any role in, or connection with, IV's acquisition of St. Lucie Press or Auerbach. Rand denies the allegations of misconduct by Danziger. Rand lacks sufficient knowledge and information to answer the remaining allegations of Paragraph 63.

64.     Rand denies that Danziger had any role in, or connection with, IV's acquisition of Micropatent. Rand denies the allegations of misconduct by Danziger. Rand lacks sufficient knowledge and information to answer the remaining allegations of Paragraph 64.

65.     Rand denies that Danziger had any role in, or connection with, IV's acquisition of the referenced businesses. Rand denies the allegations of misconduct by Danziger. Rand lacks sufficient knowledge and information to answer the remaining allegations of Paragraph 65.

66.     Rand lacks sufficient knowledge and information concerning the timing of Slaine's acquisition of his personal interest in IV or its value to answer the allegations in the first sentence of Paragraph 66. Rand admits that, in Paragraph 66, plaintiffs purport to quote a report from Slaine to Rand investors previously annexed as Exhibit O to the Affidavit of Martin Bell dated January 12, 1999, and Rand respectfully refers the Court to that document for a full and accurate statement of its contents.

67.     Rand denies that Danziger had any role in, or connection with, IV's acquisition of the referenced businesses and denies any involvement by Danziger in any of these acquisitions. Rand denies the allegations of wrongdoing by Danziger, and lacks sufficient knowledge and information to answer the remaining allegations of Paragraph 67.

68.     Rand denies that the Rand investors, if asked, would have raised additional money to purchase publications at a reasonable price and denies that they were given no opportunity to do so. Rand lacks sufficient knowledge and information to answer the remaining allegations of Paragraph 68.

**234**

69.     Rand admits that, in Paragraph 69, plaintiffs purport to quote a document previously annexed as Exhibit 2 to the Affidavit of Mason Slaine dated December 10, 2001, and Rand respectfully refers the Court to that document for a full and accurate statement of its contents.

70.     Rand denies the allegations of Paragraph 70 as to Danziger, and lacks knowledge or information sufficient to answer those allegations as to Slaine.

71.     Rand admits that, in Paragraph 71, plaintiffs purport to paraphrase a memorandum from Slaine to Rand investors and Rand respectfully refers the Court to that document for a full and accurate statement of its contents. Rand denies the allegations of wrongdoing by Danziger. Rand admits, upon information and belief, that Fame is principally controlled by E.M. Warburg, Pincus & Co. Rand admits that Danziger had a telephone conversation in July 1998 with Martin Bell in which he stated that Warburg permitted Rand to invest in IHI, and lacks sufficient knowledge or information concerning a specific discussion regarding Fame to answer those allegations. Rand denies the remaining allegations of Paragraph 71.

72.     Rand denies that Martin A. Bell is an independent director of Rand. Rand admits that Danziger recommended that Rand use its approximately $800,000 cash on hand and approximately $2.5 million cash it anticipated receiving upon the sale of PGA to invest in the IPO of IHI. Rand denies that Danziger attempted to justify such potential investment by Rand in IHI by stating that the original purpose of Rand was to "invest in Mason." Rand denies the allegations of misconduct by Danziger.

73.     Rand lacks information sufficient to answer the allegations of Paragraph 73.

74.     Rand lacks information sufficient to answer the allegations of Paragraph 74. Rand affirmatively avers that it could not "flip" any shares of IHI because Slaine's presence as an officer and director of Rand would cause the IHI shares held by Rand to be restricted under Rule 144.

75.     Rand admits that Bell, on behalf of plaintiffs, did not permit Rand to invest in the IPO of IHI, and denies the remaining allegations of Paragraph 75.

76.     Upon information and belief, Rand denies that the investments available to Slaine, as a founder and key employee of IHI, were available to Rand or anyone else, and in that connection respectfully refers the Court to Exhibit J of the Second Amended Complaint. Rand lacks sufficient information and belief concerning the value of Slaine's interest in IHI to answer such allegations. Rand affirmatively avers that it was offered the opportunity to invest in IHI's IPO on favorable terms, and that plaintiffs' representatives did not consent to such investment.

77.     Rand hereby repeats, reiterates and realleges each of the foregoing answers with the same force and effect as if fully set forth at length herein.

78.     Rand admits that the plaintiffs purport to bring this claim derivatively, but denies that a derivative suit can properly be brought without first making a demand on Danziger as an independent and disinterested director of Rand.

79.     Rand denies the allegations of Paragraph 79 insofar as they concern Danziger; Rand lacks sufficient information and belief to answer the allegations in Paragraph 79 insofar as they concern Slaine.

80.     Rand admits that, before commencing this action, plaintiffs did not make any demand upon Rand through its officers or Board of Directors. Rand denies the remaining allegations of Paragraph 80.

# 236

81.     Rand denies the allegations of Paragraph 81 insofar as they concern Danziger; Rand lacks sufficient information and belief to answer the allegations in Paragraph 81 insofar as they concern Slaine. Rand denies that plaintiffs are proper derivative representatives of Rand and respectfully refers the Court to its First Affirmative Defense.

82.     Rand hereby repeats, reiterates and realleges each of the foregoing answers with the same force and effect as if fully set forth at length herein.

83.     Rand admits that the plaintiffs purport to bring this claim derivatively, but denies that a derivative suit can properly be brought without first making a demand on Danziger as an independent and disinterested director of Rand.

84.     Rand avers that the first sentence of Paragraph 84 constitutes conclusions of law to which no response is required. Rand denies the allegations of wrongdoing by Danziger, and lacks sufficient knowledge or information to answer allegations of wrongdoing against Slaine.

85.     Rand avers that the allegations of Paragraph 85 constitute conclusions of law to which no response is required.

86.     Rand denies the allegations of Paragraph 86.

87.     Rand denies the allegations of wrongdoing in Paragraph 87 insofar as they concern Danziger. Rand lacks sufficient information and belief to answer the allegations in Paragraph 87 insofar as they concern Slaine.

88.     Rand denies that Danziger breached his fiduciary duty to Rand and its shareholders. Rand lacks sufficient information and knowledge to answer the allegations in Paragraph 87 insofar as they concern Slaine.

89.     Rand denies that Danziger breached his fiduciary obligations. Rand lacks sufficient information and knowledge to answer the allegations in Paragraph 89 concerning

Slaine. Rand admits that plaintiffs seek damages. Rand denies that Slaine and Danziger should be excluded from recovery and affirmatively avers that Justice Cahn decided this issue to the contrary in his Opinion dated November 3, 1999.

90.     Rand hereby repeats, reiterates and realleges each of the foregoing answers with the same force and effect as if fully set forth at length herein.

91.     Rand admits that the plaintiffs purport to bring this claim derivatively, but denies that a derivative suit can properly be brought without first making a demand on Danziger as an independent and disinterested director of Rand.

92.     Rand denies that plaintiffs are entitled to any direct recovery.

93.     Rand hereby repeats, reiterates and realleges each of the foregoing answers with the same force and effect as if fully set forth at length herein.

94.     Rand denies the allegations of Paragraph 94 insofar as they concern Danziger. Rand lacks sufficient information and belief to answer the allegations of Paragraph 94 insofar as they concern Slaine.

95.     Rand denies the allegations of Paragraph 95 insofar as they concern Danziger; Rand lacks sufficient information and belief to answer the allegations of Paragraph 95 insofar as they concern Slaine.

96.     Rand denies the allegations of Paragraph 96 insofar as they concern Danziger. Rand lacks sufficient information and belief to answer the allegations of Paragraph 96 insofar as they concern Slaine.

97.     Rand denies that plaintiffs are entitled to any direct recovery.

238

98 – 104.    Paragraphs 98 through 104 need not be answered because, in Court on July 24, 2002, plaintiffs' counsel agreed to dismiss this cause of action without prejudice to any proceedings in the courts of the State of Delaware.

105 – 112.    Paragraphs 105 through 112 need not be answered because this cause of action was dismissed by the Court's Opinion dated July 2, 2002.

113.    Rand hereby repeats, reiterates and realleges each of the foregoing answers with the same force and effect as if fully set forth at length herein.

114.    Rand lacks sufficient knowledge or information to answer the allegations of Paragraph 114.

115.    Rand lacks sufficient knowledge or information to answer the allegations of Paragraph 115.

116.    Rand admits that it was not notified by Warburg of any arrangement regarding IV. Rand lacks sufficient knowledge or information to answer the remaining allegations of Paragraph 116.

117.    Rand denies the allegations of Paragraph 117.

118.    Rand admits that if Danziger had been notified of improprieties committed against Rand by Slaine or Warburg, Danziger would have taken action on behalf of Rand. Rand denies that Danziger has received a demand or was made aware of any alleged improprieties at relevant times. Rand denies the remaining allegations of Paragraph 118.

119.    Rand denies that Warburg's acts caused Rand to be destroyed. Rand affirmatively alleges that the businesses in which Rand originally invested, Hospital Data Services and Financial Technology Review, both failed, despite efforts by Slaine and Danziger to make those businesses successful. Rand denies that Slaine and Danziger were employees of

Rand or that they were caused to "leave". Rand denies that plaintiffs are entitled to recover individually. Rand lacks sufficient knowledge or information to answer the remaining allegations of Paragraph 119.

120. Rand lacks sufficient knowledge or information to answer the allegations of Paragraph 120. Rand denies that plaintiffs have any direct claim for damages.

121. Rand denies that a trial by jury is proper in a lawsuit for diversion of corporate opportunities or where equitable relief is sought in part.

122. Rand denies that plaintiffs are entitled to the relief requested in the "WHEREFORE" clauses of the Second Amended Complaint.

## First Affirmative Defense

This action is barred by the Demand Rule. Plaintiffs failed to make due demand on Michael Danziger as a disinterested and independent director of Rand prior to bringing this derivative action.

## Second Affirmative Defense

Plaintiffs' claims for equitable relief are barred by the doctrines of waiver, estoppel and ratification.

## Third Affirmative Defense

Plaintiffs' claims for equitable relief are barred by the doctrine of laches.

## Fourth Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations.

240

WHEREFORE, Rand prays that the Second Amended Complaint be dismissed in its

entirety, with prejudice, that it be awarded its unreimbursed costs and disbursements in this

action, and that it be granted such other and further relief as justice may require.

Dated:  New York, New York
        August 1, 2002

                                    PILLSBURY WINTHROP LLP

                                    By: _____
                                             Frederick A. Brodie

                                    One Battery Park Plaza
                                    New York, NY 10004
                                    (212) 858-1628
                                    *Attorneys for Defendant Rand*
                                    *Publishing Co., Inc.*

TO:     JAROSLAWICZ & JAROS
        150 William Street
        New York, NY 10038

        POMERANTZ HAUDEK BLOCK GROSSMAN & GROSS
        100 Park Avenue
        New York, NY 10017

        GREENBAUM, ROWE, SMITH, RAVIN, DAVIS & HIMMEL, LLP
        Metro Corporate Campus One
        P.O. Box 5600
        Woodbridge, NJ 07095-0988

        WIILKIE, FARR & GALLAGHER
        787 Seventh Avenue
        New York, NY 10019

        COLLAZO CARLING & MISH
        747 Third Avenue
        New York, NY 10017-7600

**241**

## VERIFICATION

STATE OF NEW ~~YORK~~ ) *Jersey Law*
                        ) ss:
COUNTY OF ~~NEW YORK~~ ) *Monmouth*

    Michael Danziger, being duly sworn, deposes and says that deponent is a director and officer of Defendant

Rand Publishing Co., Inc., and that deponent has read the foregoing Answer and knows the contents thereof, and

that the same is true to deponent's own knowledge, except as to matters therein stated to be alleged upon

information and belief, and that as to those matters deponent believes them to be true.

                    RAND PUBLISHING CO., INC.

                    By: Michael Danziger

Sworn to before me this
3 Vt day of July, 2002

*Lawrence H. Wertheim*
~~Notary Public~~
Lawrence H. Wertheim
At Attorney-At-Law of
the State of New Jersey

# EXHIBIT "G"

# RAND PUBLISHING CO., INC.
c/o Winthrop, Stimson, Putnam & Roberts
One Battery Park Plaza
New York, NY 10004-1490

To the Stockholders of Rand Publishing Co., Inc.:

The undersigned, as officers and stockholders of Rand Publishing Co., Inc. (the "Company"), are submitting herewith for your approval a Unanimous Written Consent of the Stockholders to liquidate and dissolve the Company. Based on the circumstances outlined below, we have concluded that the proposed liquidation and dissolution is in the best interests of the Company and its stockholders. Accordingly, we ask that each stockholder execute and return to the Company a copy of the enclosed Unanimous Written Consent.

We believe that the proposed liquidation and dissolution of the Company is fair to, and in the best interests of, the Company and its stockholders after consideration of a number of factors, including but not limited to the following:

(1)     The Company was formed with the limited objective of investing approximately $3.6 million in the funding of two start-up ventures: Financial Technology Review and Hospitality Data Systems. Both of those ventures were unsuccessful and the Company's investments therein were terminated.

(2)     The Company's assets presently consist of: (i) approximately $3,000,000 in cash, approximately $2,200,000 of which represents after-tax proceeds from the sale on September 1, 1998 of the Company's membership interest in Progressive Grocer Associates LLC ("Progressive Grocer"); and (ii) 167,000 shares of capital stock in Fame Information Services, Inc. ("Fame"), which the Company acquired for $500,000 and which represents less than 5% of the outstanding capital stock of Fame.

(3)     The Company is advised that, if the cash proceeds from the sale of Progressive Grocer are retained as an asset of the Company and not invested in carrying on an active business, the Company may be deemed a personal holding company for tax purposes. Status as a personal holding company would result in the imposition of the regular corporate income tax of approximately 34%, plus an additional tax of 39.6% on all after-tax income that is not distributed. Consequently, if the income earned by the Company after the sale of the Company's interest in Progressive Grocer is not distributed, the Company could be subject to a personal holding company tax on such undistributed income. Alternatively, the Company could be subject to an accumulated earnings tax.

(4)     The Company's minority interest in Fame does not provide for any operational or management control of Fame.

(5)     Because the Company has terminated its investments in Financial Technology Review and Hospitality Data Systems, and the Company's investment in Progressive Grocer (its principal asset) has been liquidated through a sale of the publication, the undersigned no longer deem it appropriate to develop the Company's business or to be involved in the Company's affairs on a significant basis. In addition, due to the threat of litigation by certain investors, the undersigned do not believe that the investors and the management of the Company would be able to work together with respect to future development of the Company's business. Consequently, Mason Slaine, the Company's Chairman and a director, and Michael Danziger, the Company's President and a director, intend to resign as officers and directors of the Company, and the Board of Directors intends to appoint Mr. Kenneth Pokora of Wilton, Connecticut as the Chairman, President and a director of the Company. Mr. Pokora has consented to such appointments by the Board of Directors.

You are urged to sign the enclosed Unanimous Written Consent and return it as promptly as possible in the enclosed envelope to Winthrop, Stimson, Putnam & Roberts, One Battery Park Plaza, New York, NY 10004-1490, attn: Frederick A. Brodie. In the event that we do not receive all of the signatures to the Unanimous Written Consent by Tuesday, October 20, 1998, we shall pursue judicial remedies, including forced dissolution of the Company.

_____/s/_____
Mason Slaine
*Chairman*

_____/s/_____
Michael Danziger
*President*

New York, New York
September 11, 1998

2