```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
RAND PUBLISHING CO., INC.,                      :
                                                :
                Plaintiff,                      :    07 Civ. 9596 (VM)
                                                :
        - against -                             :
                                                :
VENTURETEK, L.P., RICHARD ELKIN,                :
ANTOINE BERNHEIM, STACY BERNHEIM                :
and GENSTAR, LTD.,                              :
                                                :
                                                :
                Defendants.                     :
------------------------------------------------------------------X
```

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS OF DEFENDANTS ANTOINE BERNHEIM, STACEY BERNHEIM, <u>RICHARD ELKIN, AND GENSTAR, LTD.</u>

Michael I. Allen (MA 6692)
Joseph B. Crace, Jr. (JC 6557)
SHAPIRO FORMAN ALLEN
SAVA & McPHERSON LLP
*Attorneys for Defendants Antoine
Bernheim, Stacy Bernheim, Richard Elkin
and Genstar, Ltd.*
380 Madison Avenue
New York, New York 10017
Tel: (212) 972-4900
Fax: (212) 557-1275

# TABLE OF CONTENTS

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.   Rand Has Not Plausibly Pled a Claim for Contractual Indemnification, as It Has Failed to Plead Facts Establishing a Breach of the Shareholders Agreement . . . . . . . . . . . . . . . . . . . 4

    A.   Rand Cannot Allege Adequately That Defendants Breached Section 18 of the Agreement or That Any Such Breach Triggers an Obligation to Indemnify Rand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.   Rand Has Not Met the Pleading Requirement of Federal Rule of Civil Procedure 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.  Rand's Resort to the Implied Covenant of Good Faith and Fair Dealing Does Not Save Its Defective Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III. Rand's Claim That Defendants Are Liable for Millions in Lost Profits Must Be Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF AUTHORITIES

**Cases**

Anthracite Capital, Inc. v. MP-555 West Fifth Mezzanine, LLC,
   No. 03 Civ. 5219 (DLC), 2005 WL 1155418 (S.D.N.Y. May 17, 2005),
   aff'd 165 Fed. Appx. 875 (2d Cir. Dec. 20, 2005) ................................. 9

Bacon v. Suffolk Legislature,
   No. 05-CV-4307 (JFB) (ETB), 2007 WL 2288044 (E.D.N.Y. August 8, 2007) ........ 8

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007) ........................... 7, 8

BHC Interim Funding, L.P. v. Finantra Capital, Inc.,
   283 F. Supp. 2d 767 (2d Cir. 1991) ............................................ 6

Bridgeport Music, Inc. v. Universal Music Group, Inc.,
   440 F. Supp. 2d 342 (S.D.N.Y. 2006) .......................................... 10

Contempo Acquisition, LLC v. U.S. Department of Housing and Urban Development,
   No. 06 Civ. 3654 (DF), 2007 WL 3254916 (S.D.N.Y. Oct. 30, 2007) ............... 8

Dujardin v. Liberty Media Corp., 359 F. Supp 2d 337 (S.D.N.Y. 2005) ............... 5

Ello v. Singh, No. 05-CV-9625, 2007 WL 3396483 (S.D.N.Y. Nov. 13, 2007) ........... 8

Ganino v. Citizens Utilities Co., 228 F.3d 154 (2d Cir. 2000) .................... 11

Gitnik v. Home Depot U.S.A., Inc.,
   No. 07 CIV 1244 (MDF), 2007 WL 2728358 (S.D.N.Y. Sept. 18, 2007) .............. 8

In re Sea-Land Corp. Shareholders Litigation,
   C.A. No. 8453, 1987 WL 11283 (Del. Ch. May 22, 1987) ......................... 11

In re Shoe-Town, Inc., C. A. No. 9483, 1990 WL 13475 (Del. Ch. Feb. 12, 1990) .... 11

Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007) ....................................... 8

Kikis v. McRoberts Corp., 225 A.D.2d 455 (1st Dep't 1996) ........................ 11

Kramer v. Time Warner Inc., 937 F.2d 767 (2d Cir. 1991) ........................... 6

Lucente v. International Business Machines Corp., 310 F.3d 243 (2d Cir. 2002) ............ 11

Miller v. Lazard, Ltd., 473 F. Supp. 2d 571 (S.D.N.Y. 2007) ......................... 2, 11

Oppman v. IRMC Holdings, Inc., 14 Misc.3d 1219(A) (N.Y. Sup. 2007) .................. 6

Primex International Corp. v. Wal-Mart Stores, 89 N.Y.2d 594 (1997) ................... 5

Richbell Information Services, Inc. v. Jupiter Partners,
    309 A.D.2d 288 (1st Dep't 2003) ............................................. 6

Sathianathan v. Smith Barney, Inc.,
    No. 04 Civ. 7122 (DAB) (FM) 2006 WL 538152 (S.D.N.Y. Feb. 24, 2006) .......... 9

Sauer v. Xerox Corp., 95 F. Supp. 2d 125 (W.D.N.Y. 2000) ........................... 10

Sheth v. New York Life Insurance Co., 273 A.D.2d 72 (1st Dep't 2000) .................. 9

Defendants Antoine Bernheim, Stacy Bernheim, Richard Elkin and Genstar, Ltd. (collectively, "Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the Complaint of Rand Publishing Company, Inc. ("Rand").[1]

## BACKGROUND

The present action has been brought by Rand to punish the Defendants for having the temerity to bring a derivative action on behalf of Rand against two of its directors in state court (the "State Court Action"). In the State Court Action, the Defendants here alleged that two Rand directors – Mason P. Slaine ("Slaine") and Michael E. Danziger ("Danziger") – usurped several corporate opportunities of Rand and breached their fiduciary duties. Ultimately, Justice Herman Cahn dismissed the State Court Action, finding that Rand lacked the resources to take advantage of the opportunities, and therefore, neither Slaine nor Danziger usurped an opportunity belonging to Rand. (Justice Cahn's Memorandum Decision at 14, a copy of which is attached to the Complaint as Exhibit A.)[2] Justice Cahn's decision was upheld on appeal. (See Complaint Exs. B, C.)

Rand, which allegedly indemnified Slaine and Danziger in connection with the State Court Action, now seeks to recoup from Defendants the fees and expenses it paid on behalf of Slaine and Danziger, as well as fees it claims were directly incurred by Rand, pursuant to the

---

[1] Defendants also join in the motion of Defendant Venturetek, L.P. made simultaneously herewith.

[2] Justice Cahn also found that the claim failed because the opportunities were not directed to Slaine in his capacity as a director of Rand. (Complaint Ex. A at 15.)

parties' 1993 Agreement for Issuance and Sale of Stock (the "Agreement").[3] According to Rand, by filing the State Court Action, Defendants breached Section 18 of the Agreement, which, in turn, triggered its claimed right to indemnification pursuant to Section 20 of that same Agreement.

Section 18 of the Agreement, the only provision of the Agreement claimed by Rand to have been breached, and the sole basis for the claim for indemnification, is an ordinary merger clause. It provides:

> *Entire Agreement.* This Agreement constitutes the entire contract between the parties with respect to the subject matter of the Agreement. Neither party has relied on any representations not explicitly set forth in this Agreement.

(Crace Decl. Ex. A at 8.)

Section 20(a)(ii) of the Agreement provides:

> Each Investor [i.e., the Defendants] shall indemnify...the Corporation and each Shareholder [i.e., Slaine and Danziger]...from and against any and all Indemnifiable Losses relating to, resulting from or arising out of any breach of any of the representations, warranties or covenants of such Investor contained in this Agreement or any of the other agreements contemplated hereby.

(Id. at 9.)

Rand alleges that because the State Court Action was premised on alleged representations made by Slaine that were not set forth in the Agreement, the Defendants breached Section 18 and

---

[3]The Agreement is discussed at length in the Complaint, but inexplicably, is not attached to that pleading. A copy of the Agreement is attached to the Declaration of Joseph B. Crace, Jr. (the "Crace Decl.") as Exhibit A. This Court may consider the Agreement on this motion to dismiss. Miller v. Lazard, Ltd., 473 F. Supp. 2d 571, 578 (S.D.N.Y. 2007) (Marrero, J.) ("Courts may consider any documents that are attached to, referenced in, or integral to the preparation of the pleadings.").

2

are now liable, pursuant to Section 20(a)(i),[4] for the legal fees that Rand, Slaine and Danziger allegedly incurred in defending the State Court Action. (Complaint ¶¶ 29, 45.)

As demonstrated below, the claim that Section 18 of the Agreement somehow created an affirmative right to indemnification fails for several reasons. First, that provision is not, pursuant to the Agreement or otherwise, a representation, warranty or covenant of any of the Defendants, the breach of which is a precondition to their obligation to indemnify Rand. Nor was the State Court Action premised on any extra-contractual representation. Rather, the Complaint filed in the State Court Action contained counts against Rand, Slaine and Danziger alleging usurpation of corporate opportunities and breach of fiduciary duty, neither of which is rooted in alleged extra-contractual representations. (See State Ct. Complaint ¶¶ 77-89, attached to the Crace Decl. as Exhibit B.) Indeed, in dismissing the State Court Action, Justice Cahn placed no reliance on any alleged representation. Rather, although the complaint filed in the State Court Action did contain allegations regarding historical representations made by Slaine, Justice Cahn found that the claims alleged in that Complaint were for breach of fiduciary duty, most notably, for usurpation of corporate opportunities – not claims based on prior representations. He dismissed the State Court Action on the grounds that Rand did not have the ability to take advantage of the opportunities and further, those opportunities were not presented to Slaine and Danziger in their capacities as directors or officers of Rand. (Complaint Ex. A at 7-8, 12-15.)

Nor can Rand's Complaint be saved by alleging that Defendants breached implied terms, including an alleged implied covenant not to sue. Such a covenant must be express. The implied

---

[4] Rand also claims that Defendants are liable under Section 20(a)(i) of the Agreement. That provision, however, governs the obligation of Rand, Slaine and Danziger to indemnify the Defendants.

3

covenant of good faith and fair dealing is not a substitute for a nonviable breach of contract claim. Finally, Rand's claim for indemnification based on the Defendants' decision not to make an investment, which ultimately turned out to be profitable, has no basis in either law or in fact. For these reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

## ARGUMENT

### I. RAND HAS NOT PLAUSIBLY PLED A CLAIM FOR CONTRACTUAL INDEMNIFICATION, AS IT HAS FAILED TO PLEAD FACTS ESTABLISHING A BREACH OF THE SHAREHOLDERS AGREEMENT

#### A. Rand Cannot Allege Adequately That Defendants Breached Section 18 of the Agreement or that Any Such Breach Triggers an Obligation to Indemnify Rand

According to Rand, the State Court Action was allegedly based on certain unspecified "representations" by Slaine that induced Defendants to invest in Rand. (Complaint ¶ 29.) The filing of the State Court Action, then, supposedly constituted a breach of Section 18 of the Agreement, which states that the parties had not "relied on any representations not explicitly set forth in this Agreement." (Id.) This alleged breach, in turn, according to Rand, triggered the indemnity obligation of Section 20(a)(ii).

The claim fails for several reasons. First, by its clear terms, the obligation to indemnify Rand under Section 20(a)(ii) is triggered only where there has been an Indemnifiable Loss (as that term is defined in the Agreement) "relating to, resulting from or arising out of any *breach of any of the representations, warranties or covenants* of such Investor [i.e., Defendants] contained in this Agreement...." (Crace Decl. Ex. A at 9 (emphasis added).) The sole breach alleged by Rand is the alleged breach of Section 18. But Section 18 is not a representation, warranty or

covenant. As the Agreement makes clear, the "representations, warranties and covenants" of Rand, Slaine and Danziger are found in Section 4 of the Agreement, entitled "Representations, Warranties and Covenants of the Corporation and the Shareholders." (Id. at 2-4.) Similarly, the representations and warranties of the Defendants are contained in Section 7 of the Agreement. (Id. at 5-6.)

Section 18, in contrast, is a merger or integration clause that does not provide an affirmative right to relief. As might be expected, an exhaustive search of caselaw has revealed no cases where an alleged breach of a merger or integration provision in a contract has conferred upon a party a right of recovery. This fact is not surprising given that a merger clause is an entirely defensive provision that serves an evidentiary purpose; it is intended to "establish the intent of the parties that the writing shall be an integration of their agreement," thereby "contractually requir[ing] application of the parol evidence rule to the parties' agreement." Williston on Contracts § 33:21; see also Dujardin v. Liberty Media Corp., 359 F. Supp. 2d 337, 356 (S.D.N.Y. 2005) ("It is generally understood that the purpose of an integration clause is to...bar the introduction of extrinsic evidence to vary or contradict the terms of the writing." (citing Primex Int'l Corp. v. Wal-Mart Stores, 89 N.Y.2d 594, 600 (1997))).

Second, despite Rand's bald assertions to the contrary, the State Court Action was not premised on a claim that Defendants relied on extra-contractual representations. To the contrary, the State Court Complaint states claims for usurpation of corporate opportunities and breach of

fiduciary duty, neither of which are rooted in extra-contractual representations made by Slaine or Danziger. (Crace Decl. Ex. B at ¶¶ 77-89.)[5]

Indeed, the proposition that the State Court Action was premised upon extra-contractual representations, as now alleged, is wholly at odds with the allegation that Defendants' alleged reliance in the State Court Action on Slaine's extra-contractual representations "raised issues of fact that made it difficult to have the State Court Action dismissed as a matter of law, and required discovery that protracted the case substantially." (Complaint ¶ 30.) Had those extra-contractual representations formed the basis of the State Court Action, a simple motion to dismiss would have likely ended that Action. See Richbell Info. Serv., Inc. v. Jupiter Partners, L.P., 309 A.D.2d 288 (1st Dep't 2003) (granting a motion to dismiss where "there was a merger clause disclaiming reliance on extrinsic representations" in a stockholder agreement); Oppman v. IRMC Holdings, Inc., 14 Misc.3d 1219(A) (N.Y. Sup. 2007) (granting a motion to dismiss where "Plaintiffs' allegations that Defendants breached provisions of a previous oral contract are barred by the merger clause in the Stockholder's Agreement"). Instead, and by Rand's own admission,

---

[5] The characterization of the State Court Action as being grounded in allegations of extra-contractual, but unspecified, representations is entirely new and litigation-inspired. Prior to the filing of this action, Information Holdings, Inc., a company discussed further in Part III *infra*, described the State Court Action in its public filing as one "alleg[ing] that certain assets or businesses acquired by IHI, including businesses acquired prior to the Company's initial public offering in August 1998, were corporate opportunities usurped from Rand. Plaintiffs allege that Slaine and Danziger breached fiduciary duties allegedly owing to Rand by allowing IHI's predecessor, Information Ventures LLC, to acquire those businesses." (IHI Form 10-K filed with the Securities and Exchange Commission as of March 31, 2003 at p. 10, attached to the Crace Decl. as Exhibit C.) This Court may consider SEC filings on a motion to dismiss. Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991); see also BHC Interim Funding, L.P. v. Finantra Capital, Inc., 283 F. Supp. 2d 968, 974 n.2 (S.D.N.Y. 2003) (holding that SEC "filings are self-authenticating and that the Court may take judicial notice of them when deciding a motion to dismiss").

6

such a motion was "difficult" and, indeed, not made, leading to the ineluctable conclusion that the representations in question never fell within the scope of the merger clause. Accordingly, since Defendants' alleged reliance on extra-contractual representations could not trigger the application of the merger clause in the State Court Action, those very same representations certainly cannot now be alleged to constitute a breach of that same contractual provision.

### B. Rand Has Not Met the Pleading Requirement of Federal Rule of Civil Procedure 8(a)(2)

Finally, the allegations contained in the Complaint are so vague and conclusory that even if Section 18 was construed to be a representation or warranty of the Defendants, which it is not, the allegations of the Complaint are insufficient to state a claim under Federal Rule of Civil Procedure 8(a)(2).

Nowhere does Rand's complaint inform the reader what representations were allegedly relied on by the Defendants in bringing the State Court Action. Rand alleges only that "oral and written representations allegedly made by Slaine prior to defendants' investment in Rand" were the basis for the State Court Action. (Complaint ¶ 23(e), 29.) Nor is there any attempt to plead how these relied upon, but unspecified, representations caused Rand any harm.

Pursuant to Rule 8(a)(2), Rand is required to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (2007). The Supreme Court has recently addressed the Rule 8(a)(2) pleading requirements, and expressly held that a plaintiff must plead facts sufficient to "***plausibly suggest***[]" that he is entitled to relief. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1966 (2007) (emphasis added). A plaintiff's obligations extend beyond merely setting forth "labels and conclusions," or "a formulaic

recitation of the elements of a cause of action." Id. at 1965. The threshold requirements of Rule 8(a)(2) require more: the "plain statement" must "possess enough heft to 'sho[w] that the pleader is entitled to relief." Id. at 1966. A complaint will be dismissed where "it fail[s] *in toto* to render plaintiffs' entitlement to relief plausible." Id. at 1973, n.14. See also Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (recognizing a flexible "'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." (emphasis in text)).

Courts in the Southern District have consistently granted motions to dismiss complaints where the plaintiffs have failed to meet the pleading requirements of Rule 8(a)(2) by "nudg[ing] [their] claims across the line from conceivable to plausible," and stating a claim for relief that is "plausible on its face." Gitnik v. Home Depot U.S.A., Inc., No. 07 CIV 1244 (MDF), 2007 WL 2728358, at *1 (S.D.N.Y. Sept. 18, 2007); see also Contempo Acquisition, LLC v. U.S. Dep't of Housing and Urban Devp't, No. 06 Civ. 3654 (DF), 2007 WL 3254916, at *2 (S.D.N.Y. Oct. 30, 2007) (dismissing a complaint where plaintiff's "boilerplate allegations" were "insufficient to demonstrate a plausible basis for a claim of relief"). Cf. Ello v. Singh, No. 05-CV-9625, 2007 WL 3396483, at *3 (S.D.N.Y. Nov. 13, 2007) (refusing to permit Plaintiffs to file an amended complaint where certain conclusory allegations failed to meet the standard set forth in Twombly).

Here, Rand does not come close to meeting its burden. The Complaint "falls far short of giving fair notice of the claim as required under Rule 8(a)(2)." Bacon v. Suffolk Legislature, No. 05-CV-4307 (JFB) (ETB), 2007 WL 2288044, at *7 (E.D.N.Y. Aug. 8, 2007). Rand has not specified which prior representations of Slaine allegedly formed the basis of the State Court Action, much less how these prior representations could plausibly serve as the basis for claims

for breach of fiduciary duty and usurpation of a corporate opportunity (the only claims contained in the State Court Action).

## II. RAND'S RESORT TO THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING DOES NOT SAVE ITS DEFECTIVE CLAIM

Perhaps recognizing that the actual words of Section 18 do not get it where it would like to be, Rand alleges that the filing of the State Court Action also "violated an implied term of Section 18 . . . that no party would sue any other party to that Agreement on the basis of claimed representations not contained in the Agreement." (Complaint ¶ 29.)

Rand, however, cannot plead a breach of the "implied covenant of good faith and fair dealing" as a substitute for a nonviable breach of contract claim. Under New York law, the implied covenant of good faith and fair dealing may only be implied "in aid and furtherance of other terms of the agreement of the parties." Anthracite Capital, Inc. v. MP-555 West Fifth Mezzanine, LLC, No. 03 Civ. 5219 (DLC), 2005 WL 1155418, at *9 (S.D.N.Y. May 17, 2005), aff'd 165 Fed. Appx. 875 (2d Cir. Dec. 20, 2005). The implied covenant of good faith and fair dealing may not "be used as a substitute for a nonviable breach of contract" claim, such as where a party attempts to use the implied covenant of good faith and fair dealing to state a claim for the alleged breach of terms not contained in the contract. Id.; Sheth v. New York Life Ins. Co., 273 A.D.2d 72, 73 (1st Dep't 2000) (same); see also Sathianathan v. Smith Barney, Inc., No. 04 Civ. 7122 (DAB) (FM), 2006 WL 538152, at * 28 (S.D.N.Y. Feb. 24, 2006) ("The implied covenant cannot impose duties or limits on the contracting parties which are inconsistent with that contract.").

Even more specifically, a covenant not to sue may not be read into the Agreement under

9

cover of the implied covenant. In Bridgeport Music, Inc. v. Universal Music Group, Inc., 440 F. Supp. 2d 342, 344 (S.D.N.Y. 2006), this Court refused to do precisely that where, as here, the contract did not include express language to that effect. The court found that "[e]ven when covenants not to sue *are* explicitly incorporated in agreements, they are 'not looked upon with favor by New York Courts, are strictly construed against the party relying upon them, and [require] *clear and explicit language* in the agreement.'" (emphasis added) (quoting Sauer v. Xerox Corp., 95 F. Supp. 2d 125, 129 (W.D.N.Y. 2000)).

### III. RAND'S CLAIM THAT DEFENDANTS ARE LIABLE FOR MILLIONS IN LOST PROFITS MUST BE DISMISSED

As alleged in the Complaint, Slaine and Danziger invested their own funds in an initial public offering (the "IPO") of a company called Information Holdings, Inc. ("IHI"), on whose Board Danziger served. (Complaint ¶¶ 18, 20.) Rand alleges that fearing a claim of conflict of interest, Slaine and Danziger delegated to the Defendants, shareholders of Rand, the decision about whether Rand should make an investment in the IPO. (Id. ¶¶ 20-22.) Rand then alleges that pursuant to some "scheme" to exact "greenmail" from Rand in connection with the IPO, the Defendants refused to permit the investment (Id. ¶ 23), and that this "bad-faith refusal to permit Rand to invest in the IHI IPO cost Rand between $6.5 and $12.5 million in profits that would have been earned if it had made the investment." (Id. ¶ 36(a).)

This claim is without merit and should be dismissed. It is untethered to any provision in the Agreement imposing on the Defendants any obligation to make investment decisions, much less a provision requiring Defendants essentially to guarantee the profitability of those investment decisions. Moreover, and at the risk of giving more credence to the claim than it is

worth, even if the complaint were construed to be an attempt to plead a breach of fiduciary duty claim, it would fail nonetheless. Under Delaware law[6], a noncontrolling minority shareholder owes no fiduciary duty to a corporation. See, e.g., In re Shoe-Town, Inc., C.A. No. 9483, 1990 WL 13475, at *6 (Del. Ch. Feb. 12, 1990) (holding that "a minority shareholder does not owe a fiduciary duty for that reason alone"); In re Sea-Land Corp. Shareholders Litig., C.A. No. 8453, 1987 WL 11283, at *4-*5 (Del. Ch. May 22, 1987) (holding that "under Delaware law a stockholder has fiduciary obligations only if it is a controlling stockholder"). Rand has not alleged, nor could it allege, that Defendants controlled Rand; therefore their claim must fail.[7]

## CONCLUSION

For all of the foregoing reasons, as well as each of the reasons stated in the Memorandum of Law submitted by Venturetek, L.P., Defendants respectfully request that the Court dismiss the Complaint with prejudice.

Dated: December 12, 2007
New York, New York

---

[6] Rand is a Delaware corporation. Issues of corporate governance are determined by the law of the state of incorporation. Venturetek, L.P., v. Rand Publishing Co., Inc., Index No. 605046 (Sup. Ct. N.Y. County, March 8, 2006) at 10 (citing Kikis v. McRoberts Corp., 225 A.D.2d 455 (1st Dep't 1996)) (Complaint Ex. A.)

[7] In addition, the contention that Defendants' alleged breach of duty "cost Rand between $6.5 and $12.5 million in profits it would have earned had it made the investment" (Complaint ¶ 36(a)), is absurd. Damages resulting from a failure to purchase stock are not measured with the benefit of perfect hindsight. Rather, such damages are measured at the time of the breach. See Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 262 (2d Cir. 2002). Following the offering, IHI's stock traded only pennies over the $12 IPO price, and only weeks later, traded well below that price. (See Chart of Post-IPO Stock Prices, attached to the Crace Decl. as Exhibit D.) The Court "may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment." Miller, 473 F. Supp. 2d at 578 (taking notice of historical stock prices of stock traded on NYSE) (quoting Ganino v. Citizens Utilities Co., 228 F.3d 154, 167 n.8 (2d Cir. 2000)).

SHAPIRO FORMAN ALLEN
SAVA & McPHERSON LLP


By:_____/s/ Michael I. Allen_____
      Michael I. Allen (MA 6692)
      Joseph B. Crace, Jr. (JC 6557)

380 Madison Avenue
New York, New York 10017
Tel: (212) 972-4900
Fax: (212) 557-1275
*Attorneys for Defendants Antoine
Bernheim, Stacy Bernheim, Richard Elkin
and Genstar, Ltd.*